RECEIVED
01/02/2024
KELLY L. STEPHENS, Clerk

**Case Nos. 23-5795 and 23-6108**

# In the United States Court of Appeals for the Sixth Circuit

**HONORABLE ORDER OF KENTUCKY COLONELS, INC.**
**Plaintiff - Appellee**
**v.**
**KENTUCKY COLONELS INTERNATIONAL; GLOBCAL**
**INTERNATIONAL; ECOLOGY CROSSROADS COOPERATIVE**
**FOUNDATION, INC.; and UNKNOWN DEFENDANTS (Defendants)**
**by**
**COL. DAVID J. WRIGHT, KENTUCKY COLONEL**
**Defendant - Appellant - Whistleblower**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE CIVIL DIVISION**
**DISTRICT COURT ORDERS IN CASE NUMBERS**

**3:20-cv-00132**
**3:23-cv-00043**

**MOTION FOR AFFIRMATIVE RELIEF**
**MOTION TO CONSOLIDATE APPEAL**
**MOTIONS FOR SPECIAL CASE DESIGNATION**

**Col. David J. Wright**
**Goodwill Ambassador for the Commonwealth of Kentucky**
**302 General Smith Drive | Richmond, Kentucky 40475**
**(859) 379-8277**
**Appellant *Pro Se* in *Forma Pauperis***

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT
# CASE NO. 23-5795 and 23-6108

HONORABLE ORDER OF KENTUCKY COLONELS, INC.

Plaintiff-Appellee

v.

KENTUCKY COLONELS INTERNATIONAL; GLOBCAL

INTERNATIONAL; ECOLOGY CROSSROADS COOPERATIVE

FOUNDATION, INC.; and UNKNOWN DEFENDANTS

Defendants


By

COL. DAVID J. WRIGHT, A KENTUCKY COLONEL

Defendant-Appellant


# MOTION FOR AFFIRMATIVE RELIEF

Comes now, **Col. David J. Wright ("Colonel Wright") or ("Appellant")**, a *pro se* in *forma pauperis* defendant/appellant in the matter: [The] **Honorable Order of Kentucky Colonels, Inc. v. Kentucky Colonels International** (an unincorporated defunct association**), et. al.** admitted as Sixth Circuit Court of Appeals **Case Nos. 23-5795** and **23-6108,** to present appeals from **Western Kentucky District Court Cases 3:20-cv-00132 and 3:23-cv-0043** pursuant to Federal Rules of Appellate Procedure, Rules 2, 3, 4, 8, 18, 24, 26, 27, 44 and 48. If the Appellant does not request affirmative relief and make these motions no one else will, this motion affirms and combines all relative pending actions making it affirmative relief.

# BACKGROUND

This case before the Court involves what could have been two landmark **trade name vs. trademark** cases that never saw their glory because they were brought in bad-faith to retaliate against the Appellant (a donor, member, volunteer and whistleblower) for commenting on public policy, the Appellee's organization, disclosing closely-held information researched online, publishing news articles, and making a "disambiguated semantic editorial soup" from the Appellee's trademark "KENTUCKY COLONELS" for several of their products as a descriptive and generic term and keyword idea for concepts born in history, belonging to the defendant, and existing in the public domain dating back to 1775, in an organizational schism that was dismissed with prejudice in light of a confidential court-mediated settlement conference under a mistaken agreed permanent injunction that was sanctioned and a non-effectual post-settlement agreement became ambiguously confused with a confounding persistent preliminary injunction that was erroneously issued against the Appellant and held against him as a protective order for the Appellee's commercial benefit based in judicial bias and deference for the Plaintiff's law firm because the organization is a charity solely upon its own request, notwithstanding consideration of trademark law or the constitutional and common-law civil rights of the Defendant, or as a member. The invalidated preliminary injunction was mistaken and reinforced in place of the different equitable agreed permanent injunction prejudicing the Defendant in a 2023 court order. The Law Firm is well known to the District Court, some of the judges and court staff have worked for the Plaintiff's law firm (one recusal), the Plaintiff is very well-known in the Kentucky Western District Court of Louisville Community-at-Large because it holds events associated with local tourism, fundraises for a local good works fund, runs local public service announcements in the media and has annual events in conjunction with the Kentucky Derby, many of the U.S. District Court judges (another recusal) and many court officers are Kentucky Colonels and thus members of the Plaintiff's organization automatically. The Law Firm presented the Plaintiff without

disclosing the specific uses of the mark, but instead how a related mark required immediate protection of the charity's goodwill to protect the public interest which was with their own name "HONORABLE ORDER OF KENTUCKY COLONELS", the trademarks in question "KENTUCKY COLONELS" previously used for barbecue sauce, cigars, chocolates, keychains, and t-shirts that were ambiguously confused with those that were actually those filed three days before the lawsuit on February 17, 2020. The Appellant is appealing the cases because the U.S. District Court never should have taken them on and should have protected the civil rights and constitutional rights of the Defendant as a donor, 20+ year member, volunteer and whistleblower based on information disclosed in his affidavit submitted to the court for the first hearing late on March 04, 2020, before being considered inconsequential evidence and moreover too late for the hearing by Judge Rebecca Grady Jennings several days afterwards on March 09, 2020 when she took over the case after the second recusal within the first 14 days. Subsequent orders are all based on a judicial bias that was developed on the presentation of the Plaintiff up until March 04, 2020, notwithstanding the Article III standing and consideration of the only human Defendant, despite his Answer, Affirmative Defenses, and Motions that were filed within timely guidelines later and never heard or unresponded by the Plaintiff claiming irrelevance. The District Court is terribly mistaken if it believes it can find a Kentucky Colonel guilty, in contempt or sanction them for violating the terms of an invalid preliminary injunction or based withstanding two complaints that were dismissed with prejudice, one by mutual agreement and one by the court in favor of the first. The court's orders are nothing but statuteless balderdash that conspires to deny and restrict the Appellant's inalienable civil rights and the rights established under any/all applicable fair-use exceptions not considered by the court.

Reopening the confidentially settled case 3:20-cv-00132 disrupted its finality, undermined appellant's expectations, broke confidential covenants, sought to damage (and did damage) retained rights and property, and now risks eroding the integrity of the judicial system with a broken promise (renegation)

manifested by a US court of laws. Strict protocol protects these vital interests by ensuring only truly exceptional circumstances, demonstrably new evidence, or clear procedural errors warrant revisiting, reopening or superseding cases governed by confidential agreements.

## REASONABLE MOTION

"One of the great challenges in this world is knowing enough about a subject to think you're *wright*, but not enough about the subject to know you're *wrong*." ― Col. Neil deGrasse Tyson  -  (emphasis added)

The *Pro Se* Appellant, Colonel Wright sets forth, this filing is a **special preliminary combination motion for affirmative relief and is progressive litigation of justice** to demonstrate the appellant's desire and eagerness to continue in this action as the Appellant. This combination motion should be heard in conjunction with appellant's **"Motion for Time and Date to File Appellant's Brief and Request for Discretionary Relief" in 23-5795 [Document: 9]** Filed: 11/03/2023, Pages: 1-14, which are herein consolidated based on **"Committee Notes on Rules—1998 Amendment"** (paragraph 3) which state: A party filing a [motion,] response [or reply] in opposition to a motion may also request affirmative relief. It is the Advisory Committee's judgment that it is permissible to combine the response and a new motion in the same document. Indeed, because there may be substantial overlap of arguments in the response and in the request for affirmative relief, a combined document may be preferable. If a request for relief is combined with a response [or reply], the caption of the document must alert the court to the request for relief. The time for a response to such a request and for reply are governed by rules regulating responses. As a general rule, either party can file a motion for affirmative relief at any time for the right reasons.

This filing also takes into consideration pending matters in **Case No. 23-5795** like **[Document 10]** which is an inadequate bad-faith and prejudicial response filed by the appellee of the appellant's previous motion **[Document 9]** which the Appellant has foregone a formal reply to the response, except with a single word "prejudicial", herewith is set forth in this **<u>new motion</u> for affirmative relief** to "combine and

consolidate" should all be treated together as related; but also, because they are all immediately actionable by the court; forthwith, without delay, and without prejudicing or anticipating the necessity of further dilatory, prejudicial or vexatious responses or replies from the appellee at this stage; while the burden (including this preliminary motion for affirmative relief in good-faith) remains on the Appellant to make and present his Appellate Brief; normally, once the Appellate Brief has been filed the Appellee is given plenty of opportunity to file a Reply Brief and respond to any preliminary or post scheduling motions granted. This is not a district court where the plaintiff sets the impartial stage or denies the Appellant any remedies that are available or favorable to expedite and facilitate justice, preventing access to these remedies is prejudicial.

It should be noted, without elaboration, that there is clearly sound basis, in fact, for the Appellant's assumptions based on precedent from the Alabama Court of Appeals, in a case involving petitioners, which held that the ordinance is "void for vagueness because of overbroad, and consequently meaningless, standards for the [protection] of [registrations] for [trademarks]," and that the [agreed order] [*can only be*] enforced discriminatorily. *Shuttlesworth v. City of Birmingham*, 43 Ala.App. 68, 180 So. 2d 114 (1965) - (substitutions made with emphasis added). It was not the merits of such claims, but the refusal of the Alabama lower courts to consider them [in-law], that were involved according to the Appellate Court.

This case is extraordinary because the Appellant has become a victim of a retaliatory public action and hazing campaign filed and created by the Appellee that has disarmed and prejudiced the appellant of his civil rights, created an apprehensive hostile environment, and alienated him from his personal property, real estate and intellectual property more than 20 years ago. So much so that, the Sixth Circuit Court of Appeals will need to administratively frame the case notwithstanding the District Court Opinions or the Plaintiff ethically as an appeals court should to avoid prejudicing the Appellant from the free exercise of his rights in the filing and presentation of his appeal:

- **Implied Duty of Candor and Fairness:** Appellees and Appellants have an implied duty to act with candor and fairness towards the court and each other. This duty extends to refraining from actions that deliberately prejudice the other party's ability to present their case.

- **Violation of Rules of Professional Conduct:** Attorneys representing the Appellee are bound by the Rules of Professional Conduct, which emphasize their duty to avoid unfair tactics and misrepresentations that harm the opposing party. Engaging in behavior that prejudices the Appellant could be considered a violation of these rules and subject the attorney to disciplinary action.

- **Potential Sanctions:** If the Appellee's actions directly interfere with the Appellant's right to a fair hearing, the court may issue sanctions. These can range from reprimands and fines to dismissal of the Appellee's arguments or even reversal of the lower court's judgment.

- **Examples of Prejudicial Conduct:** Witness tampering, intimidation, harassment, fraudulent concealment, influence peddling, or bribery aimed at affecting the Appellant's case; misrepresentations or fabrications of evidence presented to the court; unlawful obtention of evidence during an investigation; spreading malicious rumors or damaging information about the Appellant to unfairly influence the court's opinion, or engaging in destructive, disruptive, or obstructive behavior during the appeal process.

The Appellant sets forth, he asserts the reservation of his rights to file various preliminary motions consistent with the Sixth Circuit's local rules that are permitted under the Federal Rules of Appellate Procedure without being admonished, challenged, chastised, criticized, discriminated upon, handicapped, labeled, mocked, ridiculed, or in any other way prejudiced as an inferior or inexperienced "Pro-Se Appellant" opponent by the Appellee, these motions may include:

**Motion to stay:** This requests the court to temporarily halt the lower court's decision or execution of its judgment while the appeal is pending. This could be relevant if the initial judgment poses immediate

harm to the appellant or if the judgment was not automatically stayed on appeal or through the interlocutory jurisdiction of the court based on the nature of the appeal.

**Motion to expedite:** If the case involves urgent concerns or continuing potential irreparable harm, an appellant might request the court to expedite the appeal process.

**Motion to appoint special master**: If the case was erroneously framed, involves an Appellant's civil rights, involves fraud, whistleblowing or is subject to an Article 1 divisional court jurisdiction - a special master can be designated upon motion or solely at the discretion of the Court to expedite it.

**Motion to consolidate appeals:** Multiple appeals related to the same case can be consolidated on motion or by the court. Consolidation is affirmative relief if it streamlines the process and avoids redundancy, without prejudice to the parties.

**Motion to clarify or modify the lower court's judgment:** The original judgment contains ambiguities and inconsistencies that form the basis for this appeal.

**Motion to file in forma pauperis:** This allows the Appellant to continue to proceed on appeal without paying court fees if he/she/they can demonstrate financial hardship. This is done with an affidavit detailing income and assets **[that is not more than 6 months old]**.

**Motion to appoint pro bono counsel:** An appellant unable to find legal representation may have some time to petition the court to appoint an attorney or help them find a pro-bono attorney to assist them for free in civil rights cases. Due to the magnitude and size of the case and the time required to understand the complexity of the case can be considered as factors that are out of reach to the appellant and demonstrate a need for counsel.

**Motion to extend time:** Filing deadlines are crucial, but extensions can be necessary in complex cases or if an Appellate party lacks legal assistance. These motions must be justifiable requests with specific reasons and timelines without prejudicing the parties.

**Motion to compel discovery:** If certain evidence was blocked, denied or unheard in the lower court, an appellant can request access to its consideration in their appeal. The appellant must demonstrate its relevance and how it strengthens their case.

The Appellee should be assured that none of these motions are prejudicial to the appellee, if made, they are all made in good-faith, and to confront and prepare the appellee for the battle to come; but also warned that opposition to preliminary *pro se* appellant/defendant motions for affirmative relief will be considered as prejudicial by their very nature of denying rights that the Appellant may have available to him or consideration that should be in place for an expert, 20 year colonel proceeding *pro se* in *forma pauperis*.

There are other motions as well that an Appellant may want to file preliminarily (early in the case) and a number of motions and pleadings that the Appellant may file once a case has been docketed, but generally it is the appellant that is to perform and present the the case, not the appellee:

**1. Appellant's Burden of Persuasion:** The appellant bears the burden of persuasion in an appeal, meaning he must prove the lower court committed reversible error. This involves demonstrating, through arguments and evidence, that the decision or case was:

- **Legally erroneous:** The court misapplied and/or misinterpreted the law.

- **Procedurally flawed:** The case was presented as a SLAPP action.

- **Factually flawed:** The decision was based on clearly erroneous findings of fact.

- **Abuse of discretion:** The court unreasonably exercised its discretion in making its ruling.

- **Mistaken errors:** The court mistook previous orders for current ones.

- **Fraudulent and misrepresented:** The court failed to take notice of fraudulent activity.

**2. Standard of Review:** Depending on the issue being considered within the appeal, different standards of review apply. These standards influence the level of scrutiny the appellate court gives to the lower court's decision and the degree of evidence the appellant needs to present to succeed. In reviewing factual findings,

the court typically applies a "clearly erroneous" standard. This means the appellant must show that the evidence overwhelmingly contradicts the lower court conclusions. There are additional standards of review and it is the appellant that must request them.

**3. Appellate Brief Requirements:** Appellate rules require the appellant to submit a brief outlining the legal and factual basis for their appeal. This brief serves as the appellant's primary tool for explaining why the lower court erred and why the appellate court should reverse the judgment or take other requested actions to make a remedy.

**4. Appellant's Responsibility:** The fundamental principle that the burden of persuading the Circuit Court that the District Court erred is upon the appellant. Appellant has a responsibility to "marshal its arguments" and properly analyze the facts in support of its appeal.

**5. Caveat:** While these principles learned reviewing cases underscore the appellant's responsibility to build a strong case for appeal, it's important to remember that the appellate court also plays an active role in ensuring a fair and complete review. Judges may ask questions, request additional information, and engage in dialogue with the parties to fully understand the issues presented. The United States Circuit Courts takes their work very seriously in the interest of justice for all.

This filing treats the following issues as affirmative relief for progressive litigation in a logical and reasonable preliminary order for this case:

**A. Motion to Combine 6th Circuit Appeals 23-5795 and 23-6108**

**B. Motion to Recognize the Appellant Pro Se in Forma Pauperis**

**C. Motion to Designate Pro-Bono Civil Rights Counsel**

**D. Motion to Extend Appellant Initial Briefing Schedule**

**E. Motion to Designate Special Master and Suspend Court Rules**

In *Simpson v. Superior Court*, 68 Cal. App. 2d 821, 824-825, the court held that the expression "affirmative relief sought" as provided, … "does not include mere defensive matter, by whatever name it may be called. ... By affirmative relief as used ... is meant the allegation of new matter which in effect amounts to a counterattack. In other words, the relief sought, [126 Cal. App. 2d 683] if granted, operates not as a defense but affirmatively and positively to defeat plaintiff's [original] cause of action." *Wilson v. L. A. County Civil Service Com.* (1954)

In a complex, three-year litigation where the errors originated in the case's initial framing by the plaintiff and the court, a defendant/appellant has various options to seek redress from the 6th Circuit Appellate Court. Here are several possibilities of the outcomes:

- **Vacate and remand:** Request the court to vacate the lower court's decision and send the case back for a new trial, allowing Appellant to [re-]present the case properly under the correct framing and judicial procedure.

- **Reverse and remand with instructions:** Similar to "vacate and remand," but the appellate court provides specific instructions to the lower court on how to proceed, addressing the initial framing error and other errors presented. The Court may also relocate the district court venue based on reasons presented in this appeal with the same instructions.

- **Modify the judgment:** If the error only affected part of the lower court's decision, the Appellant can request the appellate court to modify the judgment in favor of those specific points being presented.

- **Suppression of evidence:** If improper, controversial or fraudulent evidence was admitted due to the framing error, request its suppression and a new trial based on validated evidence.

- **Retribution against appellee:** Depending on the severity of the error and the appellee's conduct, the appellant may request the appellate court to impose sanctions on an appellee, such as attorney fee reimbursement, loss of income, or even damages for bad faith litigation.

- **Counterclaims:** If the appellee's initial framing caused appellant legal harm/injury beyond the loss of the case, an appellant could file counterclaims seeking damages for the actions.

- **Reparations for property loss:** Damages and request monetary compensation for the loss of use of appellant's property due to the unlawful impact of the lower court's decision.

- **Declaratory judgment:** In a case like this one that involves ambiguity over ownership or property rights, an appellant can seek a declaratory judgment from the appellate court clarifying the appellant's rightful position.

- **Writ of mandamus:** This is a rare effective remedy that can be sought if the lower court clearly and demonstrably abused its discretion by upholding the flawed framing of the case.

- **Constitutional arguments:** If the initial framing violated the appellant's civil or constitutional rights, such as due process, they can raise these arguments to challenge the entire court decision and procedural process.

- **Appealing the initial framing error:** Since the error lies at the core of the case, the appellant must build the appeal around challenging the initial framing by the plaintiff and the court. This could involve arguing that the lower court should have recognized and corrected the framing error at the beginning.

WHEREFORE, based on the foregoing reasons, Appellant most humbly and respectfully requests that this Court hear this motion for affirmative relief in its entirety or in-part and prepare an appropriate order reflecting the related preliminary motions A-E (superscribed) for the affirmative relief desired by the appellant.

## A. MOTION TO COMBINE RELATED APPEALS 23-5795 AND 23-6108

Appellant, Colonel Wright, hereby moves to consolidate or join the two above-captioned appeals, which arise from the **same district court case and involve related issues**. No definitive briefing schedule

has yet been issued in either matter, no briefs have been filed, and Appellant respectfully asks that a single briefing and argument schedule govern the matter as consolidated.

**5 CFR § 1201.36 - Consolidating and joining appeals.**

(a) Explanation.

(1) Consolidation occurs when the appeals of two or more parties are united for consideration because they contain identical or similar issues. For example, individual appeals rising from a single reduction in force might be consolidated.

(2) Joinder occurs when one person has filed two or more appeals and they are united for consideration.

(b) Action by judge. A judge may consolidate or join cases on his or her own motion or on the motion of a party if doing so would:

(1) Expedite processing of the cases; and

(2) Not adversely affect the interests of the parties.

In support of the motion the Appellant states as follows:

1. The district court case underlying both appeals arises out of claims of alleged trademark infringement, dilution, disparagement, and confusion caused or committed by Appellant exercising his civil, common-law, and constitutional rights on Wikipedia, Facebook, Google, Archive.org, the Library of Congress, and Blogger in consensus with Federal Law **Title 15 U.S. Code § 1125, not against it**. The district court case is also a result in the court's mistaken reliance on the appellee's urgent need of a discretionary temporary preliminary injunction's blanket protection diminishing, restricting, and violating the Appellant's civil rights to protect a charitable fictional idea and local Louisville entity, not a trademark.

2. At issue in No. 23-5795 and 23-6108 is a preliminary injunction that was mistaken for an agreed permanent injunction causing irreparable damage to the appellant and **unlawfully applied sanctions** based on prejudice, discrimination, judicial bias, and inequitable deference, without consideration for *any type of fair-use* and the appellant's 20+ year relationship with the appellee as a donor, member and volunteer, and as the author of the intellectual property in question (a name, trademark, and website title) originated by appellant, then unlawfully reclaimed by the appellee/plaintiff in 2003 as a U.S. Trademark.

3. At issue in 23-5795 and 23-6108 is the general breakdown and failure of the district court to treat the parties with equity obtained during a confidential settlement conference from an *ad hoc* sweeping "temporary structural injunction" issued in the same case on August 13, 2020 exceeding the statutory provisions further prejudicing the appellant and four months of litigation. The insistent dysfunctional preliminary injunction was based on the appellee's claimed apprehension and fear that their goodwill would be harmed if the conditions of the temporary restraining order ("TRO") were lifted and if an injunction were not granted.

4. The two appeals not only arise from the same proceeding(s) but involve closely related issues presented to the court as SLAPP litigation. The district court's perspective reflects a fundamental misunderstanding of the nature of the claims before it and exceeds the court's authority to exercise control over the parties in the absence of statutory legal constraints.

5. Both appeals will also require the Circuit Court to carefully examine statutory laws and state common-law rights including those based on ESI in 1998, 1999, 2000, 2001 and 2020:

   a. **Title 15 U.S. Code § 1111** - Notice of registration; display with mark; recovery of profits and damages in infringement suit, because the appellee fails to disambiguate itself, other users or

its own ambiguous unregistered intellectual property with the registered symbol ® or in common-law with the ™ symbol.

    b.  **Title 15 U.S. Code § 1114** - Remedies; infringement; innocent infringement by printers, 15 USCA § 1114(2)(C) states: Injunctive relief shall not be available to the owner of the right infringed or person bringing the action under section 1125(a) of this title with respect to an issue of a **newspaper, magazine, or other similar periodical or an electronic communication** containing infringing matter or violating matter where restraining the dissemination of such infringing matter or violating matter in any particular issue of such periodical or in an electronic communication would delay the delivery of such issue or transmission of such electronic communication after the regular time for such delivery or transmission, and such delay would be due to the method by which publication and distribution of such periodical or transmission of such electronic communication is customarily conducted in accordance with sound business practice, and not due to any method or device adopted to evade this section or to prevent or delay the issuance of an injunction or restraining order with respect to such infringing matter or violating matter.

    In trademark cases, courts must address the constitutional scope of "writings." For a particular work to be classified "under the head of writings of authors," [or creators] the Court determined, "originality is required." 100 U.S., at 94 (1879) on trademarks. The Appellant alleges on appeal that the HOKC is not the *origin* and is not the *source* of the "Kentucky Colonel" or the "Kentucky Colonel Commission" or of the "Kentucky Colonels" (name) or the "Kentucky colonels" (people) that pertain or that they may serve as an independent organization; the District Court nor the USPTO should not have deferred to the plaintiff's lead (wisdom) based on a misdescriptive, presumptive or fraudulent proclamation that the corporation has been of any unknown or uncertain origin in 1813, 1931, 1933 or 1951; because on the presumptive legal

suggestions of the plaintiff the court provided injunctive relief (unlawfully) against an online publication and blocked publicly accessible information from the public known as the Creative Commons (an educational sphere) previously accessible to the United States Trademark and Patent Office examiners using a TRO issued less than 10 days after filing three (fraudulent or bad-faith) trademark applications, in a *sophisticated harmonious legal symphony* that never should have been conducted or heard by the district court without more reliance on the defendant's position and more thorough review of the initial complaint. The legal maneuver removed the defendant from search engine rankings during the trademark examiners research period blocking the defendant's published works and Creative Commons content.

WHEREFORE, for the foregoing reasons, Appellant respectfully requests that this Court combine or join Case Nos. 23-5795 and 23-6108 because they both are in essence the same case and are dependent on one and the other, it will facilitate and expedite the case by providing affirmative relief to the Appellant.

## B. MOTION TO RECOGNIZE APPELLANT PRO-SE IN FORMA PAUPERIS

The Appellant, Colonel Wright, moves the Court to recognize him as an *independent* Kentucky Colonel (a living individual person) that is appealing this controversy *pro se* in *forma pauperis*. Appellant, herein moves for leave to proceed in *forma pauperis* pursuant to 28 U.S.C. § 1915(a) and Rule 24 of the Federal Rules of Appellate Procedure.

In support of this Motion, Appellant submitted and completed the Circuit Court's "Form 4 - Affidavit Accompanying Motion For. Permission To Appeal In Forma Pauperis" demonstrating his inability to pay the costs of this appeal without undue hardship. **See 3:20-cv-00132-RGJ, [Document 133-1] Filed 08/31/23, 7 Pages, PageID # 3827.** Less than four months ago the U.S. District Court affirmed in an order that the Appellant met the Court's criteria to waive the filing fees and be admitted as a **Pro-Se in Forma Pauperis Appellant** in **3:20-cv-00132-RGJ, [Document 137] Filed 09/21/23, PageID # 3837.**

**Independent Kentucky Colonel Status.** Appellant is an *independent* Kentucky Colonel, a title associated with the Commonwealth of Kentucky as an honorable public officer (an act in law) entitled to the rights, privileges, and benefits of serving the state as a goodwill ambassador for his lifetime. "Kentucky Colonels and notaries public are [ ] created in the name of the Commonwealth, by its Chief Executive…" — *Chief Justice Bertram Combs* in *City of Louisville Municipal Housing Commission v. Public Housing Administration,* 261 S.W.2d 286 (1953).

Kentucky Colonels International, a non-profit unincorporated association started by the Appellant, conforms and registers commissions for individuals recognized for their contributions to the Commonwealth, promotes the nominative use of the Honorable Title of the Kentucky Colonel publicly and privately, addresses policy surrounding the Kentucky Colonel Commission, and provides its supporters with network services and information communications technology ("ICT") since as early as 1998. This legal status internationally does not provide any direct financial support or benefit to the appellant, nor does it constitute employment by the State of Kentucky, nor is it connected or relative to the Appellee's organization. On information and belief, the Appellee omitted the fact that the Defendant as a Respondent was a donor, member, and volunteer of the organization suing him without his Honorable Title to prejudice him.

**Appeal Concerns Public Interest Matters.** This appeal raises questions of significant public interest related to trademark law, the right to publicity, the right to use a title in good-faith, discrimination, and freedom of speech; particularly concerning the boundaries of trademark protection for ideas and terms with historical significance from the public domain, as well as regulating and defining a trademark holders' ethical conduct. A positive outcome could benefit not only Appellant, but also individuals across the nation, owners of other unprotectable geographically descriptive, merely descriptive and generic trademarks and several others that have been bullied out of their ideas by the Appellee in recent years. There are many

justices, elected officials and other public officials in America that also maintain the "Honorable Title of the Kentucky Colonel" that are not active or inactive members of the appellee's privatized organization, simply because they are not beholding in their consent to the private entity, but to the governor and to the state which has commissioned them honorably for their deeds.

WHEREFORE, for the foregoing reasons, Appellant respectfully requests that this Court recognize him as a pauperis appellant for the purposes of both Case Nos. 23-5795 and 23-6108 because they both essentially the same case.

## C. MOTION TO DESIGNATE PRO-BONO CIVIL RIGHTS COUNSEL

The Appellant, Colonel Wright, a *Pro Se In Forma Pauperis* Appellant currently working and residing in Colombia, hereby moves for the appointment of *pro bono* counsel for this appeal pursuant to 28 U.S.C. § 1915(d) and the inherent authority of this Court. A "circuit's legal standard for resolving § 1915(e)(1) motions requires the district court to consider *both* the difficulty of the case *and* the *pro se* plaintiff's competence to litigate it himself." *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007). The case record in 3:20-cv-00132 was over 730 pages long within 10 days of being filed, its complexity and the serious allegations compelled the court to produce a temporary restraining order within the first 7 days against an organization engaged in nonprofit publishing activities over a trademark allegation about state's icon the "Kentucky Colonel" seeking over 1 million dollars in damages is obviously very complex, especially for defendant as a legal novice, to make it even more complex the Appellee ambiguated itself with the Appellant's keyword creations and search terms developed by the Appellant for everyone's use through his website as a portal in the late 1990s through 2001.

# I. Prejudice Due to Past Denial of Pro Bono Counsel

## A. Underlying Arguments and District Court Ruling

In the underlying district court litigation, the case and the original burdenous complaints required exorbitant retainers of $25,000 to $50,000 to take up what quickly became a 9 pound case involving over 700 pages of pleadings 3:20-cv-00132 [DN-1 through DN-23] by the 14th day generated and tendered by the Plaintiff for the district court. Appellant sought appointment of *pro bono* counsel due to financial hardship and lack of experience with legal matters exhibited by his filing in Case 3:20-cv-00132-RGJ, [Document 24] Filed 03/04/20, Pages #: 734-743 and [Document 35], Filed 05/21/20, 4 Pages, PageID # 826. However, Appellee argued that it was not within the scope of the court's authority to appoint or designate counsel to the appellant as a defendant or permit the appellant to represent the other defendants. The District Court provided Defendant(s) additional time to acquire counsel, but refused access to Pro Bono Assistance Opportunities for the Western District of Kentucky, specifically the Pro Bono Assistance Program. In July 2018, the United States District Court for the Western District of Kentucky adopted a Pro Bono Civil Case Protocol which implements a new pro bono program designed to address the Court's growing need to provide counsel for indigent litigants in certain civil cases. The Appellant has learned that both district and circuit courts are very restrictive in choosing which cases it may accept for their Pro-Bono Programs.

## B. Prejudice Arising from Denied Pro Bono Counsel

Appellant contends that the District Court's denial of *pro bono* counsel or failure to refer the defendants to a pro-bono program and more recently based on Appellee's response argument have resulted in substantial prejudice, affecting the case's outcome. Specifically:

**Unequal representation:** Appellant, a *pro se* litigant lacking legal expertise, faced a highly-resourced adversary spending over $50,000 initially in the case represented by a highly-experienced

law firm. This imbalance significantly hindered Appellant's ability to present a fully developed case and respond effectively to Appellee's arguments in the District Court.

**Inadequate understanding of complex legal issues:** The case involved intricate legal questions exceeding Appellant's *pro se* capabilities. Without *pro bono* counsel to navigate these complexities, Appellant's presentation likely suffered, potentially impacting the court's decisions.

**Misinterpretation of factual evidence:** Appellant believes *pro bono* counsel could have more effectively addressed crucial evidence and presented it in a way that better served the court's understanding of the case as a frivolous overhanded SLAPP action.

### C. Pruitt v. Mote and the Prejudice Standard

While *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) holds that a denial of a request for *pro bono* counsel is not reversible unless the plaintiff shows prejudice, subsequent case law in the Sixth Circuit recognizes instances where prejudice stemming from such denial warrants intervention.

Notably, this Court's pro bono program under Mr. Ken Loomis, according to the "Guide To Volunteer Pro Bono Appeals In The Federal Courts", "assigns appointments based on a rotation of available attorneys and law students. Law students may handle non-CJA pro bono appeals only in association with a supervising attorney, *pursuant to* Sixth Circuit Rule 46(d). Pro-bono appointments in civil appeals are uncommon; usually less than 10 [fewer more] non-CJA pro bono appointments are made each year. The most common types of non-CJA appointments are § 1983 cases." However, it will soon become apparent to the Sixth Circuit that this case was wrongly proceeded as a trademark case against a member (*former member*) who was blowing the whistle on the Appellee that sued him; it will also learn that the SLAPP action was a retaliatory lawsuit against a 20 year donor, member and volunteer of the Appellee's organization; it will become clear that the Plaintiff's counsel intentionally omitted and/or concealed relevant and significant information which would have otherwise barred it from bringing a suit; the Court will also

learn that this appeal is specifically about the appellant's civil rights and interference with them under 42 U.S. Code § 1983 - Civil action for deprivation of rights, which upon *de novo review* of the **Defendant's Initial Appearance** in **Case 3:20-cv-00132-RGJ, [Document 24] Filed 03/04/20, Pages #: 734-743** will become abundantly clear. This is around the same time a Judge David Hale, recused himself from the case and it was reassigned to Judge Rebecca Grady Jennings which most likely overlooked the filing that was served in time (but not delivered to the courtroom in time) to be heard by Judge Hale in a hearing conducted on March 04, 2020 and people were beginning to panic over COVID-19. (Zoom appearances and email filing for *pro se* defendants were not yet an option.)

**1. 28 U.S.C. § 1915(d) -** This statute grants federal courts the inherent authority to appoint *pro bono* counsel for indigent litigants in civil cases "in exceptional circumstances." This is a discretionary power, and courts consider various factors to determine whether a case qualifies as "exceptional" [or special].

**2. Sixth Circuit Precedent - Prejudice Factor:** The Sixth Circuit emphasizes the prejudice factor in its *pro bono* appointment decisions. This means the court will assess whether the litigant suffered or is likely to suffer significant prejudice due to the lack of legal representation. This prejudice can manifest through various ways, such as:

- Difficulty navigating complex legal procedures and evidence.
- Ineffective presentation of previous arguments and claims.
- Unequal footing against an opponent with legal representation.

**Other Factors -** Along with prejudice, the court may consider other factors like:

- **The merits of the case:** Although not a sole determining factor, a strong legal claim can increase the likelihood of appointment.
- **Litigant's efforts to secure pro bono counsel:** Demonstrating attempts to find an attorney independently can show genuine need.

- **Availability of qualified pro bono counsel:** The court may consider the difficulty of finding suitable counsel in your specific case.

- **Additional consideration may be given:** That there is no constitutional or statutory right to court-appointed counsel in federal civil litigation, an indigent civil litigant may ask the district court to request an attorney to represent him *pro bono publico*. See 28 U.S.C. § 1915(e)(1) (in proceedings in forma pauperis, however "[t]he *court may request an attorney* to represent *any person* unable to afford counsel").

**3. 42 U.S.C. § 1983 Cases -** While not a guarantee, claims brought under § 1983 for civil rights violations can sometimes be considered "exceptional" due to their complexity and potential public interest implications in the Sixth Circuit. However, the court will still evaluate the individual circumstances of the case and the aforementioned factors before making a decision. Perhaps the fact that so many Circuit Court Judges are Kentucky Colonels but not necessarily a member or donor of the Plaintiff's organization may be something to consider here. The Appellant affirms that the case and controversy bears right down upon extraordinary and special civil "rights, privileges, and responsibilities" designated honorably and legally by a Kentucky Governor upon a citizen of the United States, to use the Honorable Title: Kentucky Colonel *ad hoc*, formally and informally, freely to procure personal benefit with letters patent. The Court has never had a case like this one.

"After observing that civil rights cases often involve a common core of complex facts and interrelated… knowledge of the conduct of the litigation, the complexity of the case, and the skill exhibited by counsel… remains on the books as the workhorse of civil rights litigation." *Andrew Ellsworth Morgan v. District of Columbia*, (Two Cases) (D.C. Cir. 1987) 824 F.2d 1049, 263 U.S. App. D.C. 69

## II. Appellant's Indigence and Need for Pro Bono Counsel

As evidenced by previously submitted **3:20-cv-00132-RGJ [Document 133-1], Filed 08/31/23, 7 Pages, PageID # 3827**, Appellant remains unable to afford private counsel. Moreover, due to living and working on the Orinoco River at Puerto Carreño in Colombia is an obstacle that limits his ability to access many legal resources, securing pro bono counsel independently is highly challenging. Therefore, the appointment of *pro bono* counsel by this Court is crucial for ensuring access to justice and a fair resolution on appeal.

## III. Conclusion

Based on the substantial prejudice suffered due to the denied *pro bono* request and the concealment of relevant facts known by the Plaintiff in the District Court, Appellant's continued financial hardship, the fact that the Appellant is living and working in Colombia and the significant complexity of the legal issues on appeal, the appointment of *pro bono* counsel is demonstrably warranted. Granting this Motion will serve the interests of justice and ensure Appellant's civil, common-law, constitutional and ethical rights to be heard on equal footing in this crucial landscape changing appeal before this Court.

WHEREFORE, for the foregoing reasons, Appellant respectfully requests that this Court grant his Motion for the Appointment of Pro Bono Counsel.

## D. MOTION TO EXTEND INITIAL BRIEFING SCHEDULE

Appellant, Colonel Wright moves the Court to extend the Initial Briefing Schedule until it can fully consider the Appellant's MOTION TO DESIGNATE PRO-BONO CIVIL RIGHTS COUNSEL (*supra*), and consider MOTION TO DESIGNATE SPECIAL MASTER AND SUSPEND COURT RULES (*infra*) which may even resolve this controversy and case without further damage, excess expense, or injury to the parties.

The Appellant asserts than an extended briefing schedule would not be prejudicial to the Appellee; however due to the Appellant's lack of access to legal resources due to where he lives and works on the Orinoco River in South America, due to the Appellant's lack of access to high-speed Internet he limited in his ability to communicate freely internationally with others in the United States by IP telephone or via videoconference (this obstacle will be resolved March 21, 2024) and due to the fact that the original case is based on the Appellant's civil rights being sanctioned under an Agreed Permanent Injunction that was sealed with a Court Mediator's Proposal and Confidential Court Mediated Settlement Conference, which was equitable notwithstanding the Appellant's Civil Rights, that he may be further prejudiced.

So far, the Appellee/Plaintiff has invested to date over $500,000.00 in three years of vexatious, unsubstantiated and unsustainable trademark litigation which has been quietly dismissed, to bring the author of the first "Kentucky Colonels" [trademark?] website to court, cause him great irreparable harm in his objectives with his intellectual property (which was not abandoned or compromised in 3:20-cv-00132) and to intentionally inflict damage to his reputation among other members, gain an unlawful biased judgment sanctioning him on two dismissed cases based on something that was never proven, precautionary measures to restrict his civil rights, and now upon who may be shown to be the actual "first and original owner of the common-law trademark" in his creative ecommerce efforts with "KENTUCKY COLONELS" and "KENTUCKY COLONEL" as keywords, tags and search terms he would use for his website **[colonel.org]** under common-law, copyright law, and trademark and patent law.

In good faith, it is hard to imagine that the Appellee will not need more time or less to prepare their reply brief, any more or any less so much as the Appellant may be a disabled, poorer, prejudiced, and an unresourceful opponent compared to the appellee's law firm that has access to legal subscription services, online filing and databases that the appellant does not. A person can only manifest so much with Juris-M Software, however the Appellant cannot justify the request for any more time provided to *pro se* appellants

or delay the proceeding any longer than it may take to find pro-bono assistance and/or court appointed pro-bono counsel or time that may be needed to properly prepare an extensive Appellate Brief for an extraordinary case, prejudiced, ready or not.

WHEREFORE, for the foregoing reasons, Appellant respectfully requests that this Court grant his Motion to Extend Initial Briefing Schedule 30-60-90 days to afford additional time for the Court to consider the Appellant's MOTION FOR AFFIRMATIVE RELIEF in its entirety, and so the *pro se in forma pauperis* Kentucky Colonel living on the Orinoco River can have as much time as the court can afford to provide to the Appellant in addition to the normal "combined appeal" rescheduling time frame granted based on the graceful discretion of the Clerk of the Court and the Justices.

## E. MOTION FOR APPOINTMENT OF SPECIAL MASTER AND SUSPENSION OF RULES IN COMPLEX TRADEMARK AND COMMON-LAW DISPUTE

Appellant under 6 Cir. R. 2 hereby moves the court to **suspend the rules of the court for good cause to seek justice, to designate this combined appeal as a special case and consider this instant motion for the designation of a special master;** under FRAP 48(a) it would definitely be instrumental for the Court and the Parties the appointment of a special master with background expertise in trademark examination, civil rights, and/or common-law litigation that can interview the parties, perform a *de novo* review of the case file based on the *pro se* brief, consider the weight of appellant's unheard answer, affirmative defenses and motions, disambiguate the appellee's marks from the legal reality of the term, perform independent research, protect the public interest, discover how judicial bias and deference could have played a role, understand how the appellant was prejudiced early in the case, study other relevant evidence, investigate within other federal agencies, and to recommend factual findings based on relevant and semantic indisputable evidence to propose a disposition in matters ancillary to proceedings in the Court such as those presented and raised by the Appellant. Special masters are often assigned to cases that are not

framed properly by the lower court, and cases that require review from multiple legal perspectives, they can also make recommendations to mediate a case in disputes involving common-law copyright and trademark rights.

In support of this Motion, Appellant states as follows:

- Colonel Wright has a meritorious claim and is likely to succeed on its merits as an appeal and demonstrate that the Appellee is the only party infringing on his author and commissioner rights.

- This case was framed improperly as a trademark infringement case against a donor, member, and volunteer that has (some) preeminent rights and privileges to the trademark based on evidence and knowledge not disclosed by the Appellee.

- The lower court has not demonstrated equity in law and standing of the Defendant as a Kentucky Colonel through his *pro se* attempts to resolve the controversy that were presented in the case during 2020 and 2023.

- This case has multiple grounds, is complex and involves a number of novel legal issues under previously unchallenged circumstances presented at District Court on March 04, 2020 and a slighted, perhaps disregarded pleading in his Answer and Affirmative Defenses tendered on **August 25, 2020 in Case 3:20-cv-00132-RGJ [Document 62], 39 Pages**, starting on PageID # 1243.

- The colonel may be prejudiced if the Court does not suspend the technical details of the Court Rules because he is a *pro se* in *forma pauperis* appellant, that needs to be heard, must be permitted to exceed page limits to understood in this appeal and protected as the nemesis of the appellee in a retaliatory civil rights conspiracy using trademark rights.

- The colonel is a whistleblower, a commentator, an honorable officer, a goodwill ambassador and has been unlawfully targeted, scapegoated, and libeled by the appellee as an assumed disdainful donor,

member, volunteer or illegitimately notwithstanding his honorable title since the reprisals of this retaliatory controversy began.

- The colonel wishes to introduce evidence which is known to exist that was concealed by the appellee including a letter to the governor, fair consideration of a legitimate merger proposal, the existence of his intellectual property rights, newspaper articles on file at the Chronicling America project of the Library of Congress, evidence from the appellee's archives and the Internet Archive.

- The colonel wishes to demonstrate that filing two SLAPP suits disguised as trademark infringement litigation is not an effective strategy for known trademark bullies to maliciously move mountains, mounds or mole hills with an abuse of false authority.

A special master is an individual appointed by a court to assist with specific tasks in a case. Special masters are often appointed in complex cases where the court needs assistance with tasks such as: conducting discovery, disambiguating the issues, reframing the case for the court and managing the flow of information between the parties, settling disputes between the parties, making recommendations to the court on legal or factual issues, overseeing the execution of an interim settlement agreement or a court order. Special masters can address issues in complex matters that are intertwined with the state's famous founding history, iconography, folklore, and wive's tales that were part of the public domain before being used as a trademark or incorporated as a private entity, as well may be necessary in this case. A special master can also serve as a mediator to propose solutions amenable to the parties or recommend summary judgment, a judgment on the pleadings or expedite a declaratory judgment all of which were requested by the Appellant and remain unheard by the District Court.

Special masters may be appointed to assist with complex appellate cases with various tasks. Most likely a special master can resolve this case that was a controversy and remains a controversy because only a Special Master or this Court can recommend new legal settlement parameters, restore the deprived

mis-garnered civil rights to name and publicity of the Appellant, to mediate a new equitable multi-party agreed permanent injunction that disambiguates the terminology, copyrights, trademarks, patents, public domain, creative commons, open source, descriptive and generic uses of the terms to guarantee the rights of first, second and third parties within the scope of the Constitution, U.S. Code and Kentucky Common Law.

Appointing a Special Master can be considered a form of affirmative relief in certain circumstances. Special Masters typically serve as advisors to the court, assisting with complex factual or legal issues and potentially recommending solutions. While special masters cannot directly order parties to take actions, their findings and recommendations can significantly influence and steer the court's final decision and bring benefit to the parties.

The Appellant, makes the following cursory motion to be excused and pardoned from the **Federal Rules of Appellate Procedure for the Sixth Circuit Court of Appeals** under **Rule 2**, or as may be necessary — to herein suspend the rules of the court due to the fact that the appellant is not an attorney; the Appellant is a *pro se* or *pro-persona* appellant, he is without funds or savings, a *pauper* compared to most, he works outside of the United States in Colombia, and he is a whistleblower that was affirmed to be a Kentucky Colonel and former member of the Appellee and by the **District Court in the Agreed Permanent Injunction under Stipulation Five** (see *HOKC v KCI*, 3:20-cv-00132-RGJ-RSE, **[Document 93]** Filed 02/23/21, Page 3 of 4 on Case PageID #: 2058); and because this Appeal seeks to finally resolve this *case, controversy and dispute* by **vacating two cases wrongfully brought by the appellee that were dismissed with prejudice under an equitable agreed permanent injunction that was mistaken for a prohibitive preliminary injunction and a court mediated settlement agreement that was breached by the appellee and the lower court**. The Appellant trusts the Court will make a good decision and serve justice so that reparations can be made or so that damages caused by the Appellee can be absolved.

The Appellant moves the court to relax the rules of the court because this appeal requires the court to review an **unresolved semantic common-law controversy** between the parties over many years, two or more distinct acts of retaliation against the appellant, a civil rights conspiracy against the appellant's rights using trademarks to intimidate allies and other competitors, concealment of known relevant information, and to resolve the matter expeditiously within the strict letter of the law through a final judgment that seeks to cancel three or more trademarks that were hastily and mistakenly registered by the U.S. Patent and Trademark Office ("USPTO") that dilute, disparage, defame and discriminate against living people and moreover misappropriate state history based on a false origin of 1813. Recently in October the Appellant received new unlawful cease and desist demands and threats from the Appellee counsel despite the Notification of Appeal it received on August 31, 2023 creating the potential necessity for a restraining order against the Appellee and the protection of the Appellant as a whistleblower.

A special master, appointed by the court, can assist with various tasks in a complex appeal or one that involves confidential details that were previously settled by the lower court on appeal. Special masters may be assigned to resolve disputes, provide recommendations, and oversee the execution of court orders (See *Marconi Wireless Tel. Co. v. Simon*, 246 U.S. 46, 54 (1918)).

## MOTION TO SUSPEND THE RULES OF THE COURT

The appellant also seeks to be excused from the Federal Rules of Appellate Procedure, citing his *pro se* status, financial *status quo* limitations, and whistleblower role as a 20 year member and volunteer of the Appellee's organization. The appellant requests relaxation of the rules to address an unresolved semantic common-law controversy, retaliation acts, a civil rights conspiracy, and the need for a final judgment canceling allegedly mistaken trademarks. Certainly if the Appellee managed to manipulate the rules of the

court to get the case heard in the first place, it is not too much to consider their suspension for a *pro se* appellant to afford him the right to due process.

"We think that the proper rule to apply, in applying our rules", is stated in 21 CJS, Courts, § 178, p 284, thus: 'rules of court are but a means to accomplish the ends of justice, and that the court has the power to modify, suspend, or rescind its own rules whenever justice requires it, at least where no party is prejudiced thereby'. There is no legal imperative of the court to hold against a *pro se* appellant any infraction of the rules of the court or to hold a *pro se* appellant in strict compliance with the rules of the court; however this does not excuse a member of the bar that is admitted to practice in the court from the rules of the court.

"We do not of course wish to be in the position of applying a rule of foot in enforcing these rules but the court should administer them in a discretionary manner. When it appears to the court that no harm can be done to the one who makes the motion to enforce the rule, and that an injustice would be done by enforcing the rule, then the court should use grace and discretion in administering the rule. If circumstances demand, an imposition of terms may be applied [to a case]." *Guastello v. Citizens Mutual Insurance*, 160 N.W.2d 725 (Mich. Ct. App. 1968) Similarly, see *Adams v. Sharp* (1964), 61 Cal 2d 775, 777, 778 (40 Cal Rptr 255, 394 P2d 943, 944); *Myers v. Duibley* (1952), 94 Ohio App 228, 231, 232 (114 NE2d 832, 835); *Handelman v. Handelman* (1954), 17 NJ 1, 9, 10 (109 A2d 797, 802); *People v. Davis* (1934), 357 Ill 396, 399, 400 (192 N.E. 210, 212); *Ex parte Poultney v. City of Lafayette* (1838), 37 US (12 Pet) 472, 475 (9 L. Ed. 1161, 1162); *Smirl v. Globe Laboratories, Incorporated* (1945), 144 Tex 41, 45 (188 S.W.2d 676, 678).

**FRAP 2 Suspension of Rules** "On its own or a party's motion, a court of appeals may expedite its decision or for other good cause suspend any provision of these rules in a particular case and order proceedings as it directs, except as otherwise provided in Rule 26(b)", **6 Cir. R. 2 Suspension of Rules** "The court may suspend any provision of these rules to expedite its decision or for other good cause."

If this Court will consider what happened to Colonel Wright based on a judicially biased, front-end loaded and weighty SLAPP action, following the discussions, financial ruin, negotiations and mutual interests between the parties from 2014-2020, or perhaps understand how his personal reputation suffered based on careless, libelous accusations and scandalous statements to the media about him as an individual, member of 30,000 fellow members by email many who personally know the Appellant, the value of his time, work and effort he dedicated over the past 20 years and everything that he has worked to achieve shredded by the Appellee that has produced a perfectly ripened piece of fruit for the Sixth Circuit Court of Appeals.

There are compelling reasons to expedite this appeal and to treat all the issues raised by the appellant. This case is a matter of public interest, a threat to culture, a threat to the state's semantic history, and a situation where delay continues to cause irreparable harm to the *pro se* appellant and many others that have been practically silenced with few legal exceptions. The case has not received investigative journalist attention because on its face it appears to be a nuisance lawsuit over the use of a trademark, where in reality it is a case over civil rights, trade names, the right of publicity and the use of the Kentucky Colonel title by the 800,000 owners of it.

Suspending FRAP is necessary to achieve expeditious and thorough resolution to treat all the issues raised in this case. This means that the court must find that there is no other way to expedite the case without suspending the rules. Suspending FRAP will not prejudice any party's rights. This means that all parties will have an opportunity to be heard and their rights will be protected.

WHEREFORE, for the foregoing reasons, Appellant respectfully requests that this Court grant his Motion to Suspend the Rules of the Court and Designate a Special Master as part of the Appellant's MOTION FOR AFFIRMATIVE RELIEF in its entirety, and so the *pro se in forma pauperis* Kentucky Colonel living on the Orinoco River can have as much time as the court can afford to provide to the

Appellant in addition to the normal "combined appeal" rescheduling time frame granted based on the discretion of the Clerk of the Court and the Justices.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons stated above, Appellant, Colonel Wright, respectfully requests this Court to grant the following affirmative relief and continue this case providing him a new extended deadline and schedule for his Appellate Brief withstanding consideration of this instant motion:

1. **Motion to Combine 6th Circuit Appeals 23-5795 and 23-6108:** Grant Plaintiff/Appellant's Motion to Combine the above-mentioned appeals for judicial economy and clarity, considering the significant overlap in factual legal issues and additional errors presented within the same case. Documents 1-10 in case number 23-5795 and Documents 1-5 and this instant document should all be considered together.

2. **Motion to Recognize Appellant/Defendant *Pro Se* in *Forma Pauperis*:** Grant Appellant's Motion to Proceed in *Forma Pauperis* due to demonstrated financial hardship established in September of 2023, allowing Appellant to pursue this appeal without undue financial burden or further hardship.

3. **Motion to Designate Pro-Bono Civil Rights Counsel:** Grant Appellant's Motion to Designate Pro-Bono Civil Rights Counsel due to the complex nature of the legal issues involved, financial insolvency and the significant disadvantage Appellant faces as a *pro se* litigant up against a team of experienced and licensed practicing attorneys.

4. **Motion to Extend Appellant Initial Briefing Schedule:** Grant Appellant's Motion to Extend the initial briefing schedule due to the combined complexity of the two appeals, the lack of legal representation, and the need for additional time to effectively research and prepare the combined brief.

5. **Motion to Designate Special Master and Suspend Court Rules:** Grant Appellant's Motion to Designate a Special Master to oversee appellate proceedings, considering the sensitive nature of the case, its complex nature, and potential conflicts of interest with the appellee or the censorship of relevant evidence.

In the alternative, the Appellant humbly prays the Court will suspend certain court rules that may pose undue hardship or disadvantage to Appellant as a *pro se* litigant, ensuring equal access to justice and a fair opportunity to present the case. Additionally, it is the Prayer of the Appellant that the Court grant any other relief deemed appropriate, just and equitable.

Puerto Carreño, Colombia
Dated: January 02, 2024

Col. David J. Wright
Kentucky Colonel
david.wright@colonels.net
+1 (859) 379-8277

## Certificate of Service

I hereby certify that on January 02, 2024, I emailed for filing the foregoing Notice of Appeal with attachments to the Clerk of the Court for the United States Sixth Circuit Court of Appeals using the special Pro Se Intake Email CA06_Pro_Se_Efiling@ca6.uscourts.gov for entry by the Court Clerk in the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system once the Circuit Court Clerk files the document without prejudice to the Appellee.

Deborah S. Hunt, Clerk
Sixth Circuit Court of Appeals
501 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio 45202-3988