Case Nos. 23-5795, 23-6108, and 24-5511

# In the United States Court of Appeals for the Sixth Circuit

**THE HONORABLE ORDER OF KENTUCKY COLONELS, INC.**
Plaintiff-Appellee

v.

KENTUCKY COLONELS INTERNATIONAL; GLOBCAL INTERNATIONAL; ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.; and UNKNOWN DEFENDANTS (Defendants)
by
**COL. DAVID J. WRIGHT, A KENTUCKY COLONEL,**
**Individually and on behalf of all other similarly titled individuals, and in his capacity as President of Ecology Crossroads Cooperative Foundation,**
Defendant-Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE CIVIL DIVISION
DISTRICT COURT ORDERS IN CASE NUMBERS

3:20-cv-00132 and 3:23-cv-00043

MOTION TO CONTINUE TO APPEAL AND STAY JUDGMENTS

## Col. David J. Wright

Goodwill Ambassador for the Commonwealth of Kentucky
302 General Smith Drive | Richmond, Kentucky 40475

Appellant *Pro Se* in *Forma Pauperis*

**RECEIVED**
06/10/2024
KELLY L. STEPHENS, Clerk

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT
# CASE NO. 23-5795, 23-6108, and 24-5511

HONORABLE ORDER OF KENTUCKY COLONELS, INC.

Plaintiff-Appellee

v.

KENTUCKY COLONELS INTERNATIONAL; GLOBCAL INTERNATIONAL; ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.; and UNKNOWN DEFENDANTS

Defendants

By

COL. DAVID J. WRIGHT, A KENTUCKY COLONEL

Individually and on behalf of all other similarly titled individuals, and

in his capacity as President of Ecology Crossroads Cooperative Foundation,

Defendant-Appellant

## MOTION FOR STAY OF JUDGMENTS PENDING APPEAL

The Appellant, Colonel (Col.) David J. Wright, a Kentucky Colonel, today enters an appearance proceeding *pro se* and in *forma pauperis*, to respectfully move this Court, pursuant to **Federal Rule of Appellate Procedure 8(a) and Sixth Circuit Local Rule 8, to issue an order <u>staying the judgments</u> entered by the United States District Court for the Western District of Kentucky on April 22, 2024 (DE-149 and DE-150) and all other applicable District Court Orders**, until the completion and resolution of the Appellant's forthcoming A-Z Appellate Brief. The Appellant additionally requests that this Honorable Court lift the abeyance on Case Numbers 23-5795 and 23-6108 and restore this matter to the Active Circuit Court Calendar based on the rulings made by the United States District Court for the Western District of Kentucky on April 22, 2024 as a consolidated one.

FRAP 8 governs stays and injunctions pending appeal for the Sixth Circuit Court. It states that a party may request a stay from either the district court or the court of appeals. The decision to grant or deny a stay is left to the court's discretion, taking into account any or all of the following four factors:

- Likelihood of success on the merits
- Irreparable harm to the movant if the stay is denied
- Substantial injury to other parties if the stay is granted
- Public interest

Federal Rules of Civil Procedure 62(c) and (d) address the topic of staying the enforcement of judgments in district courts. These regulations facilitate the continuation of enforcement pending post-trial motions or appeals. However, the court retains discretionary authority in granting or denying such requests. In the present case, Judge Jennings, despite being aware of the financial limitations faced by the defendants, exercised her discretion and declined to approve the defendant's request for a stay. Consequently, this decision allowed the plaintiff to pursue assertive actions aimed at debt collection, which affected the defendants' reputation adversely in Madison County, Kentucky.

## STATEMENT OF THE CASE(S)

1. The Appellant has filed Notices of Appeal from three distinct District Court Memorandum Opinion Orders and a Final Default Judgment Order, of which two were rendered subsequent to the case's closure after the fruit had spoiled. **The most recent Order approved an awaited Motion to File in Forma Pauperis in Case 23-6108**, now before this Court, which commenced in December 2023 and is currently in abeyance. The District Court Order [DE-149] also *denied a stay* on the August and November District Court judgments and in a subsequent order [DE-150] defaulted against two corporate defendants which were never reinstated or appeared before the court that had remained in default since 2020, despite the corporate Defendants' status as mere platform providers that have not engaged in the courtroom proceedings, imposing sanctions on them for contempt.

2. Appellant believes a stay of the two previous contempt judgments and now a third should have been granted automatically; as well as a stay of the erroneously upheld Agreed Permanent Injunction of 2021 because it was mistakenly confused with a Preliminary Injunction of 2020 during the 2023 proceeding while the District Court disregarded the equity created in the MEDIATOR'S PROPOSAL used to settle the case.

3. The District Court in 2023 and now 2024 (with a great show of blind deference for the Plaintiff) has flatly rejected the notion of equity or an **equitable settlement** by **Magistrate Regina S. Edwards** which resulted in AGREED ORDER OF DISMISSAL [Document 94] and AGREED PERMANENT INJUNCTION [Document 93] from the **MEDIATOR'S PROPOSAL — AGREEMENT** between the parties that was created by Magistrate Edwards as a result of the CONFIDENTIAL SETTLEMENT CONFERENCE (Report) [Document 87] in 3:20-cv-00132 on December 29, 2020. Equity was negated in all three Memorandum Opinions and Orders.

    a. August 9, 2023, Document 129, MEMORANDUM OPINION AND ORDER, resulting in Case 23-5795 (Stay requested)

        i. See Notice of Appeal, Document 132

    b. November 13, 2023, Document 138, MEMORANDUM OPINION AND ORDER resulting in Case 23-6108 (Stay requested)

        i. See Supplemental Notice of Appeal, Document 142

    c. April 22. 2024, Document 149, MEMORANDUM OPINION AND ORDER and Document 150, DEFAULT JUDGMENT resulting in Case 24-5511 (Stay requested)

        i. See Notice of Appeal, Document 151

4. Appellant herein **urgently seeks a stay from this Court to prevent irreparable harm** from the Plaintiff-Appellee's attempts to collect on the judgment, attach additional liens, cause additional harm to Appellant's business activities, or continue harassing him as a member of the Plaintiff's

organization, a civil rights advocate, and as a whistleblower while the Appeal is pending before this Court.

5. On May 21, 2024 the Appellant discovered and acquired new factual judicially noteworthy evidence that concludes and implies the **Plaintiff-Appellee has engaged in fraud, deceived the public, revised substantial facts about prominent historical figures, appropriated intellectual property belonging to the public domain, and created a false misleading origin under the guise of promoting charity and commerce to inure to their sole benefit**. This evidence also suggests due to its overwhelming and compelling nature that the Plaintiff should be held responsible for its conduct under the False Claims Act by the United States Federal Government in a separate *Qui Tam Pro* Action and/or in a new case under FRCP 60(b) and 15 U.S. Code § 1125 - Forbidding false designations of origin, false descriptions, and dilution within the District Court.

6. The new evidence combined with subsequent relative news events cataloged from the Library of Congress clearly show and specifically implicate several elected and designated government officials who knowingly engaged with the Plaintiff to cover up, defraud, and alienate true historical accounts based on military and governmental records with racist historical whitewashing by a solipsist dishonorable and hubris social class known as its first honorary members.

7. Knowingly or unknowingly the Wyatt Firm of Louisville representing the Plaintiff has engaged in a cover-up to protect its client fraudulently concealing and/or intentionally omitting evidence and relevant facts from the public record clearly known by its client to commit a fraud on the U.S. District Court in 2004, 2020, and 2023 usurping on the rights of others including its so-called honorary donor members and volunteers.

    a. **Fruit of the Poisonous Tree:** This doctrine states that evidence obtained illegally or in violation of [anyone's] constitutional rights is inadmissible in court. A lawyer who knowingly used evidence obtained through illegal or unethical means, is considered to have taken from the "fruit of the poisonous tree."

    b. **Unclean Hands:** This equitable doctrine prevents a party from seeking relief in court if they have acted unfairly or dishonestly in the matter at hand. A lawyer presenting usurped and otherwise unrelated evidence by his/her client could be seen as having "unclean hands."

When a lawyer uses evidence appropriated or usurped from another unrelated party as their own, based on the suggestion of their client, or in absence of good-faith it can potentially fall under several legal and ethical violations. The court relied on evidence that should have been excluded under the doctrines of "Fruit of the Poisonous Tree" (*Wong Sun v. United States, 371 U.S. 471 (1963)*) and "Unclean Hands" (*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806 (1945)*).

1. **Misrepresentation or Fraud:** Presenting evidence obtained through unauthorized or illegal means as if it were legitimately acquired or belonging to the party can be considered misrepresentation and fraud upon the court.
2. **Violation of Rules of Professional Conduct:** Most legal ethics rules prohibit lawyers from engaging in dishonesty, fraud, deceit, or misrepresentation. Using (mis)appropriated or usurped evidence would clearly violate these rules and ethics standards.
3. **Spoliation of Evidence:** When the act of obtaining the evidence involved tampering with or destroying original documents or substituting original information, it could constitute spoliation of evidence, a serious offense with grave potential sanctions.

## ARGUMENT

**I. Appellant has a very strong likelihood of success on the merits of the Appeal.**

Appellant's Appeal raises serious questions regarding the District Court's actions and handling of this case that are likely to succeed on the merits, including but not limited to the following:

  A. The court did not acknowledge that the case constituted a controversy, dispute, and represented an act of reprisal against a member of the Plaintiff's organization who had been a dedicated member for two decades. This individual was exercising his civil and constitutional rights to freedom of expression, assembly, and the right to communicate concerns regarding wrongdoing by the

plaintiff to the governor of the state. This error was in accepting the case and prejudging the case with the imposition of a TEMPORARY RESTRAINING ORDER ("TRO") [Document 14] just five days after the case was filed by a judge who then recused himself from the matter.

B. The egregious and erroneous negation of equity and mutuality created in an agreed settlement reached in court mediated confidential settlement conference is an oversight, noticed and brought forth by the Defendant in 3:23-cv-00043 that must be addressed. Upon conversion of 3:23-cv-00043 to reopen 3:20-cv-00132 the District Court failed to distinguish between the Agreed Permanent Injunction of 2021 and the Preliminary Injunction of 2020, overlooking the equity created to settle the case. The Appellant argues that this misinterpretation constitutes a significant judicial error that warrants review (citing Fed. R. Civ. P. 60).

C. Within the matter, the early prejudgment (in Document 14) was made based on the Plaintiff presenting three brand new recent trademark applications taken for granted (thus giving the impression that they were their own exclusive marks) while beginning the case as a strategic lawsuit against public participation ("SLAPP") in opposition to a whistleblower exercising his rights as a civil rights advocate and publisher. This action prejudiced and tainted a succession of serious mistakes in the District Court's jurisprudence coinciding the ruling that the "Plaintiff would likely succeed on the merits" before ever hearing an Answer or the court having any knowledge of the Defendants.

D. The introduction of false claims and a misappropriated origin created by the plaintiff in the initial verified complaint filed on February 20, 2020 were erroneously taken for granted with blind deference as fact by the US District Court, despite the Plaintiff only having had applied for the trademarks three days earlier on February 17, 2020.

E. The entry of a default judgment against corporate defendants a second time as a finale in the same case without proper service, despite their noticeable non-participatory role as neutral facilitators and communications platform providers is an action that raises significant due process concerns (*Peralta v. Heights Medical Center, Inc., 485 U.S. 80 (1988)*). The misunderstanding of the

corporate Defendants' neutral role as communication platform hosts, does not make them responsible active participants or actors and does not give them any capacity to be found in contempt. It also questions the discretion of the court to include them at all in the wide-net cast by the plaintiff disregarding their non-participatory role.

F. The unwarranted and unjustified reliance on falsified, misconstrued, misappropriated, and unlawfully procured evidence and records leading to false assertions and fraudulent representations before the court must be addressed.

G. The inappropriate narrow framing of 3:20-cv-00132 as a trademark matter instead of a civil rights matter warrants attention, given that the District Court curtailed the civil rights of the Defendants only days into the case. Ample evidence was presented within the first five days of the case to establish that it was contentious, thereby prejudicing the primary Defendant who was a member of the Plaintiff's organization.

Appellant will demonstrate in his A-Z Appellate Brief Arguments that these and a number of additional errors warrant reversal for the Sixth Circuit to vacate all of the District Court's judgments. A Stay of Judgment is a foundational concept in civil jurisprudence in an appellate proceeding. The "Court [..] should have considered and sustained the motion to set aside the verdict, stay the judgment" *Justice Harlan, In Re Wood, 140 U.S. 278 (1891)*. The Ohio Supreme Court in *Board of Trustees.. v. Boyce, 185 Ohio App. 3d 707 (2009)* "granted appellants' motion to stay its judgment and granted appellees' motion for an injunction pending appeal." In *Nken v. Holder, 556 U.S. 418 (2009)*: the 4th Circuit granted a stay of removal pending appeal due to the petitioner's substantial likelihood of success on the merits. In *Grutter v. Bollinger, 288 F.3d 732*: although not directly related to stays, highlights the importance of considering all factors when deciding whether to grant a stay.

**II. Appellant(s) will suffer irreparable harm if a stay is not granted.**

The District Court's judgments carry significant adverse implications for the Appellant, extending beyond financial ramifications. The imposition of monetary sanctions, liens, asset discovery depositions, and ongoing collection endeavors by the Plaintiff pose a substantial economic burden,

compromising the Appellant's ability to conduct business effectively and maintain the value of intangible intellectual property assets as his creative works. Moreover, the judgments tarnish the Appellant's reputation, damaging goodwill established as a Kentucky Colonel for over 25 years and hindering future business prospects. The immediate enforcement of these judgments before or pending the appeal outcome would inflict irreparable harm on the Appellant's financial stability, prospective plans, professional career, and personal well-being. Reputational harm is often deemed irreparable because it cannot be easily quantified or remedied (*Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974)*)

The corporate defendants ensnared in the Appellee's comprehensive legal actions are also enduring severe consequences. Their reputations have been damaged, cooperative members have left the organization, hindering their capacity to maintain the solvency of their charitable and non-profit endeavors. Without paid employees, these organizations confront operational challenges, which have led to the suspension of essential public programs. This predicament alienates volunteers and undermines incentives for the continuation of functional programs, jeopardizing the organizations' long-term viability and impact on the communities and individuals they serve. This economic harm is recognized as irreparable when it threatens the viability of a business (citing *Doran v. Salem Inn, Inc., 422 U.S. 922 (1975)*).

Citing *Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008)*) the case emphasizes the need to demonstrate that "irreparable harm is likely, not just speculative." In this case irreparable harm has already occurred with the attempts of the Plaintiff to collect on the judgment by filing a lien against unknown and non-existent assets of the Defendant raising red flags in Madison County, Kentucky impeding new business contracts.

### III. Granting a stay will not substantially injure the Appellee.

The Appellee, "Honorable Order of KY Colonels, Inc.," is a well-established organization with a long history of financial stability. Its existence dates back over 90 years, attesting to its resilience and ability to withstand challenges. The Appellee's financial stability is further reinforced by its online store with millions of dollars in annual sales, which serves as a reliable source of revenue. Additionally, the

organization enjoys the support of at least 30,000 active honorary members, and hundreds of thousands of inactive members who periodically contribute to its financial well-being and overall success. "The balance of equities favors granting a stay when the harm to the appellant outweighs any potential harm to the appellee" (again citing *Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008)*).

Granting a stay would not cause significant harm to the Appellee. The stay would simply maintain the current situation, or status quo, while the appeal is ongoing. This would prevent any irreparable harm or irreversible changes from occurring during the appeals process. The Appellee's rights would be fully protected upon the resolution of the appeal, ensuring that any concerns or disputes are addressed and resolved through the proper legal channels.

Therefore, considering the Appellee's illustrious history, financial stability, and the minimal impact of a stay, granting a stay is justified. It would preserve the current situation, protect the Appellee's rights, and allow the appeals process to proceed without causing irreparable harm to the organization.

### IV. The public interest favors granting a stay.

Granting a stay in this case is in the public interest because it helps ensure a fair and just legal process. If the judgments are enforced before the appellate process is complete, it would undermine public confidence in the judiciary. This is because it would create the perception that the courts are not impartial and that the outcome of a case has already been decided before all the evidence has been presented and considered. Additionally, denying the Appellant the opportunity to fully vindicate his rights would be a violation of due process. This is because the Appellant has a right to have his case heard by a court of law and to present evidence in his defense, which was not granted by the District Court. If the judgments are enforced before the appellate process is complete, the Appellant would be deprived of this right.

Furthermore, granting a stay would allow the appellate court to review the lower court's decision *de novo* and to determine whether it was correct or handled erroneously against a competent *pro se* defendant. This would help to ensure that the correct outcome is reached in the case. Finally, granting a stay would help to preserve the integrity of the legal system. This is because it would show that the

courts are committed to following the proper procedures and that they are not willing to allow the rights of individuals to be violated. The public interest is served when courts correct procedural errors and uphold due process (citing *Nken v. Holder, 556 U.S. 418 (2009)*).

## CONCLUSION

For the foregoing reasons, Appellant most humbly and respectfully requests that this Court:

1. **Grant** his Motion for Stay of Judgments Pending Appeal and issue an order staying the enforcement of the District Court's judgments until the conclusion of all appellate processes and proceedings in this matter.

2. **Lift** the existing abeyance in these related pending cases.

3. **Deny** the Appellee's pending motions to dismiss Cases 23-5795 and 23-6108.

4. **Consolidate** Circuit Court Case Numbers **23-5795, 23-6108, and 24-5511** into a single proceeding.

5. **Waive** the filing fee for Case 23-6108 per the District Court's **Memorandum Opinion and Order [DE-149] and include Case 24-5511** based on **Appellants' Notice of Appeal** [DE-151] filed on the behalf of the corporate Defendants that have never appeared in the US District Court and remain unrepresented by legal counsel.

6. **Establish** a new scheduling order to permit the Appellant to timely file and submit a consolidated A-Z Appellate Brief in the consolidated appeal.

The Appellant further requests any additional relief that this Court deems just and equitable. Including if necessary, a summary review of previous motions for discretionary and affirmative relief.

Puerto Carreño, Colombia
Dated: June 10, 2024

*Col. David J. Wright*

Col. David J. Wright
Kentucky Colonel
david.wright@colonels.net
+1 (859) 379-8277

## Certificate of Service

I hereby certify that on June 10, 2024, I emailed for filing the foregoing Notice of Appeal with attachments to the Clerk of the Court for the United States Sixth Circuit Court of Appeals using the special Pro Se Intake Email CA06_Pro_Se_Efiling@ca6.uscourts.gov for entry by the Court Clerk in the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system once the Circuit Court Clerk files the document without prejudice to the Appellee.

Kelly L. Stephens, Clerk
Sixth Circuit Court of Appeals
501 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio 45202-3988

*Col. David J. Wright*