Case Nos. 23-5795, 23-6108, and 24-5511

# In the United States Court of Appeals for the Sixth Circuit

**THE HONORABLE ORDER OF KENTUCKY COLONELS, INC.**
**Plaintiff-Appellee**
v.
KENTUCKY COLONELS INTERNATIONAL; GLOBCAL
INTERNATIONAL; ECOLOGY CROSSROADS COOPERATIVE
FOUNDATION, INC.; and UNKNOWN DEFENDANTS (Defendants)
by
**COL. DAVID J. WRIGHT**, *aka* **KENTUCKY COLONEL,**
**Individually and on behalf of all other similarly titled individuals, and**
**in his capacity as President of Ecology Crossroads Cooperative Foundation,**
**Defendant-Appellant**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE CIVIL DIVISION
DISTRICT COURT ORDERS IN CASE NUMBERS

## 3:20-cv-00132 and 3:23-cv-00043

**RESPONSES, REPLIES AND OBJECTIONS IN OPPOSITION**
**TO APPELLEE'S MOTIONS - CONSOLIDATED**

**MOTION TO EXPEDITE APPEAL**

**MOTION FOR LEAVE TO FILE IN FORMA PAUPERIS**

## Col. David J. Wright

Goodwill Ambassador for the Commonwealth of Kentucky
302 General Smith Drive | Richmond, Kentucky 40475
Appellant *Pro Se* in *Forma Pauperis*

**RECEIVED**
06/20/2024
KELLY L. STEPHENS, Clerk

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT
## CASE NOS. 23-5795, 23-6108, and 24-5511

### HONORABLE ORDER OF KENTUCKY COLONELS, INC.
#### Plaintiff-Appellee

v.

KENTUCKY COLONELS INTERNATIONAL; GLOBCAL INTERNATIONAL; ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.; and UNKNOWN DEFENDANTS

Defendants

By

### COL. DAVID J. WRIGHT, A KENTUCKY COLONEL

Individually and on behalf of all other similarly titled individuals, and

in his capacity as President of Ecology Crossroads Cooperative Foundation,

#### Defendant-Appellant

## RESPONSE, REPLY, AND OBJECTION IN OPPOSITION TO APPELLEE'S MOTIONS
### (CONSOLIDATED & COMBINED)

Comes now, **(Col.) David J. Wright** ⧉ , a Kentucky Colonel ("Colonel Wright" or "Appellant"), *pro se* and in *forma pauperis*, Defendant-Appellant in the matter of [The] **Honorable Order of Kentucky Colonels, Inc.** ⧉ **v. Kentucky Colonels International, et al.** ⧉ (an unincorporated *defunct* membership association 1998-2000). This matter has been admitted to the Sixth Circuit Court of Appeals as Case Nos. **23-5795**, **23-6108**, and most recently introducing **24-5511** (pending IFP Petition with Motion for Leave for the Circuit Court, filed separately today). Appellant seeks to appeal from

Western Kentucky District Court Cases **3:20-cv-00132** and **3:23-cv-0043**. This appeal is made pursuant to Federal Rules of Appellate Procedure 2, 3, 4, 8, 18, 24, 26, 27, 44, and 48.

In its motions to dismiss the cases, the Appellee presents inconsequential and immaterial arguments that lack substantial factual support or legal merit. This conduct is akin to a frivolous game of charades and musical chairs between the District Court and the Circuit Court, resulting in jurisdictional overlap and confusion in an attempt to complicate the case and disorient the pro-se defendant-appellant. Requesting the Circuit Court to refrain from hearing an appeal is tantamount to asking it to abdicate its duty to serve the public and fulfill its intended purpose.

The Appellant asserts that the Western Kentucky District Court failed to provide procedural safeguards guaranteed by the Federal Rules of Civil Procedure, the US Constitution, the Commonwealth of Kentucky, and more recently the Federal Rules of Appellate Procedure, especially regarding notice and the opportunity to be heard. The Appellant further asserts the following:

1. As a whistleblower, researcher, writer, and civil rights advocate, the Appellant asserts that the U.S. District Court categorically denied and failed to protect his substantive rights. On May 21, 2024, the Appellant obtained new evidence showing that the Plaintiff, constructively committed fraud (knowingly or unknowingly) in previous cases concerning the Kentucky Colonel name, title, and common-law mark representative with known history.

2. The proceedings shall show multiple instances of judicial bias, deference favoring the plaintiff, procedural missteps, and court errors. These include the denial of due process rights, undue deference to the plaintiff's counsel, and judicial actions taken without proper understanding of the defendants' answer or standing. The court denied the Appellant's requests for summary evidentiary hearings without just cause in abeyance so the Plaintiff could relax in 2023, which prevented the fair consideration of key evidence which would prevent this case.

3.  Colonel Wright, as a *pro se* litigant, faced significant challenges due to the complex legal nature of the case and the district court's clear bias against him and for the Plaintiff's counsel. Despite these challenges, Colonel Wright has continually sought to protect the integrity of the Kentucky Colonel title and to bring the Plaintiff's and their counsel's actions to light.

4.  The Appellant has been a Kentucky Colonel since 1996 and has always acted in good faith to uphold the honor and traditions of the title. The Plaintiff's actions have undermined the foundation of what it means to be a Kentucky Colonel. This case is crucial for preserving that heritage, revealing and uncovering 250 years of state history.

5.  The Appellant argues that the Plaintiff's use of the trademark 'KENTUCKY COLONELS' is deceptive, misleading, and an attempt to monopolize a title that should be freely available to those honored with it. This trademark claim overreaches, spoils, creates a deceptive origin, in violation of 15 U.S. Code § 1125 - forbidding false designations of origin, false descriptions, and dilution, the trademark damages the spirit and intent of the Kentucky Colonel designation.

6.  Additionally, the Appellant challenges the court's decision to disregard and/or dismiss his counterclaim type allegations. These counterclaims including a motion for a declaratory judgment were based on substantial grounds, including the Plaintiff's infringement on Appellant's rights and the misrepresentation of the Kentucky Colonel title to the public. As counterclaims made by a recognized civil rights advocate and whistleblower, they are admissible as probative evidence and evidentiary facts by the Circuit Court.

7.  The Appellant has worked to gather and present evidence to the court, only to be met with resistance, disregard, slighting, abeyance, dismissals, and strikes. The procedural history of this case shows a pattern of disregard for the Appellant's rights and a preference for the Plaintiff.

8.  The Plaintiff's counsel has a history of engaging in deceptive practices, as known in previous cease and desist demands involving the Kentucky Colonel title against a number of corporations, individuals, and the Appellant's cooperative suppliers. The Appellant's dismissed, previously presented evidence in 2020, further exposes these fraudulent actions and questions the integrity, knowledge, and values of the Plaintiff's legal representation.

9.  The Appellant contends that the court's refusal to grant an evidentiary hearing was a critical error, preventing the proper evaluation of key evidence. This refusal to consider the defendant's notions is part of a broader pattern of judicial conduct that has unfairly favored the Plaintiff.

10. The Appellant requests that the appeals court consider the new evidence and the procedural irregularities in this case. A fair and impartial review is essential to uphold justice and the true spirit of the Kentucky Colonel title.

11. The Appellant has faced significant obstacles in seeking justice and preserving the honor of the Kentucky Colonel title. The procedural errors, judicial bias, and the Plaintiff's fraudulent actions must be addressed or highlighted, identified, and set-aside to ensure a fair outcome.

12. The Plaintiff's attempts to monopolize the Kentucky Colonel title through trademark claims distort its historical and cultural significance and infringe on the rights of those honored with this designation. The Plaintiff's actions threaten the title's integrity, and it is essential that the court takes decisive action to protect it from further misuse. The Appellant's new evidence shows that the Plaintiff has systematically misled the court and the public about the nature of their claims.

13. Appellant's efforts to protect the Kentucky Colonel title from misuse have faced considerable resistance. Despite providing substantial evidence and legal arguments, the court has consistently favored the Plaintiff, disregarding the Appellant's legitimate concerns and rights.

14. The denial of due process rights and the failure to consider the Appellant's evidence constitute a grave injustice. The appellate court's intervention is necessary to rectify these errors and ensure that the legal proceedings are fair and just.

15. In light of the new evidence and the procedural errors in the forthcoming Appellate Brief, the Appellant will respectfully request that the Sixth Circuit overturn and vacate the lower court's decisions, grant an evidentiary hearing for a declaratory judgment, and provide a fair opportunity to present the case of the Kentucky Colonel. Justice and fairness demand such an outcome for the Kentucky Colonel Commission.

16. The Appellant's new evidence includes documented materials that clearly show the Plaintiff's fraudulent activities and disconnection with Kentucky Colonels when it was established in 1933 or 1957, but not 1931. This evidence was not available during the original staging, making its consideration crucial for a just resolution of the case starting with the Temporary Restraining Order [DE-14] on February 25, 2020.

17. The Appellant asserts a procedural history of admitting this heavyweight SLAPP demonstrates a series of judicial decisions that have systematically disadvantaged the Appellant. The sophistication of what became a dismissed case was started with a firestarters' torch. From the denial of judicial notice, in the absence of a legal warning, to the rejection of key motions, the Appellant's ability to present a full and fair case has been severely compromised by the sheer weight of the Plaintiff's allegations and the *status quo* of Louisville society.

18. The Appellant asserts that the lower court's actions have not only affected the outcome of this case but also set a dangerous precedent for future cases involving the Kentucky Colonel title. It is imperative that the appellate court address these issues to prevent further injustices.

19. The integrity of the Kentucky Colonel title is of utmost importance to the Appellant and the broader community, perhaps as many as 500,000 colonels in the United States. The Plaintiff's actions threaten this integrity, and it is essential that the court takes decisive action to protect the title from further misuse and dilution.

20. The Appellant asserts that the Court should recognize the significant implications of this case for all current and future Kentucky Colonels. The court's decision will have a lasting impact on the preservation and respect of this honorable title.

The Appellant appreciates the court's consideration of this appeal and remains hopeful that a thorough review will lead to a just and equitable resolution. The Kentucky Colonel title must be preserved as a symbol of honor and goodwill, free from the influence of fraudulent claims and actions.

---

The Office of the Kentucky Colonelcy is an Honorable Civilian Office called the Kentucky Colonel Commission designated in title for life, "Kentucky Colonels are commissioned civil officers of the state as are public notaries. Chief Justice Bertam Combs (1953) Kentucky Supreme Court."

The making of a Kentucky Colonel is one of the few remaining discretionary common-law legal actions and traditional practices of the Governor of the Commonwealth, registering each commission legally with the Secretary of State, which records the titles. In essence, the governor claims the good-deed of an individual through recognition upon nomination and creates a Kentucky Colonel title which is recorded by the secretary of state. What the commission actually means or represents, and legal standing of the colonel as a civilian officer or as a militia rank (depending on the document) has been a subject of political debate, editorial, historical curiosity, fictional literary works, mystery, it raises questions about titles throughout the 19th century, and even has generated judicial speculation since Lt. Col. John Bowman of Transylvania was commissioned the First Colonel of Kentucky County on

December 21, 1776 by the Governor of the Commonwealth of Virginia, Col. Patrick Henry [Jr.] who served July 6, 1776–June 1, 1779. Col. John Bowman's commission was to create a civil government. On January 01, 1777 Colonel John Bowman got to work and began developing a formative government in Kentucky County headed by colonels he commissioned designated under his authority, and of course under the authority of Col. George Rogers Clark who was responsible for the entire Northwest Territory and Kentucky. The Kentucky colonel has been a formative fixture in the Kentucky territory's history since 1780 when author John Filson visited Kentucke. John Filson was one of the few people in American History to have made history as a historian, and to have met Daniel Boone, George Rogers Clark, and John Bowman, and other colonels made in Kentucky by the three of them.

The reality of the historical Kentucky Colonel perhaps resides best with Justice John Marshall in 1824 when he merged the idea into the public domain while at a pub in Philadelphia upon being challenged to illustrate a paradox in the presence of several who were Kentucky colonels when he said, "In the Bluegrass region a paradox was born, the corn was full of kernels, and the colonels full of corn." By 1833, the Kentucky Colonel took to the stage at the Covent Garden in England as Col. Nimrod Wildfire in a stage play "A Visit to New York" also known as "The Kentuckian." In 1861, Chief Justice John Marshall Harlan (at the time Kentucky's Colonel under President Lincoln) secretly commissioned 1,000 honorable Kentucky colonels in Louisville to wear the Union uniform and keep a civil presence who were mostly professors, physicians, and attorneys, ultimately to keep Kentucky blue. One of the people commissioned was 13 1⁄2  year old William O'Connell Bradley, known as a "Kentucky Colonel" since the war until he became governor in 1895, establishing a new tradition of his own, making the Kentucky Colonel an official representing Kentucky as a symbol of productivity, prosperity, and goodwill. The legacy of Governor William O'Connell Bradley civilian colonels continues today.

These instances of Kentucky Colonels do not reflect or align with Plaintiff's history, memory, or narratives. In fact these stories contradict its philanthropic branded 1813 trademark propaganda.

# BACKGROUND SUMMARY

During the third and fourth quarters of 2023 the US District Court for the Western District of Kentucky concluded that the Defendant, now Appellant, Col. David J. Wright, was to be held responsible in **MEMORANDUM OPINION AND ORDER [DE 129]** for contempt on August 09, 2023. Wright shows clearly he was erroneously and mistakenly held responsible for violating an **ORDER** establishing a **PRELIMINARY INJUNCTION [DE 58]** from August 13, 2020 in Case Number 3:20-cv-00132 which was agreeably dismissed with prejudice on February 23, 2021 as a result of a **CONFIDENTIAL COURT MEDIATED SETTLEMENT** held on December 29, 2020. The mistaken reliance on ideals established by the August 13, 2020 ruling notwithstanding the settlement are clearly equivalent as evidenced in **Mem. Op. & O 129** which mistakenly quotes the August 13th, 2020 **"Preliminary Injunction"** in place of the post-settlement **"Agreed Permanent Injunction"** of February 2021 without the consideration of the equity established in the confidential settlement conference under the fifth stipulation, a subsequent agreement, or the activities of the Plaintiff in 2021 and 2022. The erroneous, **Mem. Op. & O 129 from the US District Court was appealed with the Appellant's Notice of Appeal [DE-132] on August 31, 2023 to create Sixth Circuit (6 Cir.) 23-5795. This case is now presently being delayed, complicated, and compounded by additional appealable Mem. Op. & O rulings (actions initiated by the Appellee) issued by the U.S. District Court as recently as April 22, 2024 since the case was officially closed on November 13, 2023.**

## MERITS AND ISSUES

Based on this document, the following merits appear to center on several key issues:

**1. Judicial Bias and Errors:** There are multiple instances of judicial bias and court errors in the proceedings, including discretionary denial of due process rights, blind deference to the plaintiff's counsel, and judicial action without proper knowledge of the defendants.

**2. Whistleblower Status and Retaliation:** Appellant's status as a whistleblower and civil rights advocate since prior to the case, Appellant asserts that substantive rights were categorically denied and unprotected by the U.S. District Court. Appellant claims that the Plaintiff's actions over trademark were a sham, the goal was filing a retaliatory lawsuit against Appellant's civil and constitutional rights.

**3. New Evidence of Fraud:** Appellant has acquired new evidence obtained on May 21, 2024, which demonstrates that the Plaintiff, with the same law firm, perpetrated a fraud upon the court in previous cases related to the Kentucky Colonel title and their trademark.

**4. Procedural Safeguards and Rights to Appeal:** Appellant argues procedurally safeguarded right to appeal and substantive rights were violated, highlighting the need for the Sixth Circuit to address these procedural and substantive issues..

**5. Recusal and Conflicts of Interest:** Appellant details instances where judges recused themselves from the case early on, with one judge prejudging the merits without adequate knowledge of the defendants and another judge imposing strict preliminary injunctions. These recusal and conflict of interest issues are presented as undermining the fairness of the judicial process.

**6. Request for Consolidation and Expedited Appeal:** Appellant requests the consolidation of multiple appeal cases and an expedited appeal process, citing ongoing damage to the Appellant and numerous appealable issues resulting from the misuse of the Kentucky Colonel title descriptively and generically leading to additional dilution and with questionable fictional historical revisionism.

These points collectively form the basis for a compelling appeal, arguing that judicial bias, procedural errors, new evidence, and conflicts of interest have significantly impacted this case, warranting appellate review and relief.

## MOTIONS, RESPONSES, REPLIES, AND OBJECTIONS IN OPPOSITION

Before it, the Sixth Circuit Court has several pending motions in **23-5795**, **23-6108,** and **24-5511**, **filed by the Appellant seeking affirmative and discretionary relief** and several more motions **filed by the Appellee that are attempting to spoil, prejudice, and prevent the Appellant from seeking justice and filing a Comprehensive A-Z Appellate Brief** to have this Court fully examine this Appellant's Case under the standard of *de novo* review to reveal a collection of erroneous mistaken inequitable missteps, denial of due process, disregard of pro-se motions, and general lack of consideration for the confidential settlement that have resulted in a grave miscarriage of justice with implied guilt for unfounded infringement and financial sanctions for a Kentucky Colonel and his nonprofit organization. The Appellant in his motions has requested the appointment of a special master and/or the court to designate counsel *pro-bono*. The Appellant insists **this is a civil rights matter disguised as a trademark infringement case involving a whistleblower**; the parties were in agreement infringement was not at issue and did not occur in 2020/2021 when they signed their settlement agreement. Since the fifth day following the initiation of this case on February 20, 2020 the Appellant's civil rights have been chilled, enjoined, restrained, and tamped-down by the court; where they have remained under arrest greatly misunderstood by the US District Court.

Due to the **less than ethical norms and standards attempting to be applied** by the **Plaintiff-Appellee against the Appellant**, opposing counsel's staunch resistance to acknowledge the recorded past of his client to negotiate or sustain an amenable resolution with the Appellant, continued attempts to sequester viable evidence and facts about his client, his continued onslaught of intent to prejudice, sophisticate, and discredit the **Pro-Se Appellant** from moving forward on Appeal, and the District Court's error in the refusal to consider the Defendant's **ANSWER AND AFFIRMATIVE DEFENSES [DE-62]** presented timely in August of 2020, or review DE-62 prior to reopening the case in March 2023, the District Court reopening a case with a settlement agreement, voids the terms of

settlement. Further reopening the case, the entire case has been re-opened. Re-opening this closed case was an error of the court, the second error of the court was converting the new case allegations into a contempt hearing that was concurrent with the previously dismissed case. The defiant hubris Plaintiff and the District Court refusing to acknowledge the equity created in the confidential settlement conference and subsequent mediator's agreement, or to acknowledge that collateral estoppel, *res judicata*, and *stare decisis* should have applied to this case in the first place; the *Pro-Se* Appellant has no other option but to **move the Sixth Circuit to <u>EXPEDITE THIS APPEAL AS A SPECIAL CASE</u> with the appointment of a special master and an order limiting contact between the Pro-Se Appellant and counsel for the Appellee at the Wyatt Firm**, which has done nothing less than blow a controversy and plain matter out of proportion by perpetrating fraud upon the District Court and against the Appellant with a **500+ page strategic lawsuit against public participation ("SLAPP") twice**, once in 2020, and again in a separate action in 2023, if the law firm had disclosed the fraudulently concealed fact that the Defendant is one of its previously most-respected members, donors, and volunteers that has boosted and bolstered their activity years prior to the Plaintiff coming online in 2001. Whereas, in 1998 and again using social media in 2006 the Appellant was there 4 to 9 years earlier. **This is actually a very new or special type of case for this court,** whereas there is evidence that demonstrates, implies and suggests the Plaintiff has violated the **False Claims Act,** the **Trademark Act**, the **Copyright Act**, and the **Volunteer Protection Act of 1997,** *this case may be novo*. There are so many facts that the Plaintiff had clear knowledge and awareness of, but **preferred not to disclose to the district court**, about the civil rights advocate and the settlement conference which would have prevented this second SLAPP initiated as **COMPLAINT [DE-1] 3:23-cv-00043** on January 25, 2023.

Also now pending before the Court, most recently, the **Pro-Se Appellant** has initiated a new **Notice of Appeal [DE-151]** creating Case: **6 Cir 24-5511** *in the same matter* to protect the rights of a **contumacious and *nihil dicit* corporate defendant** (a public charity) found in default of 3:20-cv-00132

on August 13, 2020 because it **could not afford to pay for an attorney and could not find** *pro-bono*

**representation** due to the case being erroneously framed as a trademark matter on the deferred

suggestion of the Appellee. The corporate defendant, Ecology Crossroads Cooperative Foundation, Inc.

and its subsidiary Globcal International were found responsible for contempt on default in **District**

**Court Order [DE-150]** on April 22, 2024 (supposedly was its final order) after the case was already

closed for providing the Appellant a publishing platform as his vehicle to exercise his substantive rights

under the US Constitution. The U.S. District Court or the Plaintiff have finished compiling final and

appealable erroneous orders on this case *because the actions of the U.S. District Court have not been*

*stayed*.

The U.S. Circuit Court of Appeals **should most likely anticipate additional appealable orders**

**challenging its jurisdiction,** now that the U.S. District Court issued another **ORDER [DE-156]** striking

the most recent **NOTICE OF APPEAL [DE-151]** and **MOTION TO WAIVE FILING FEES**

**[DE-152]** made by the President (this Appellant) of a *nihil dicit* **corporate defendant in default** (that is

a nonprofit charitable organization) and the Plaintiff-Appellee more recently filing a new **MOTION TO**

**COMPEL THE JUDGMENT [DN-157]**, after the case, was now for the third time within the

jurisdiction of the Sixth Circuit Court of Appeals of the United States since the U.S. District Court

recognized the Defendant's **Right to Appeal** with **ORDER ON MOTION FOR LEAVE TO APPEAL**

**IN FORMA PAUPERIS [DE-137]** on and that it was in the jurisdiction of the Sixth Circuit Court.

Therefore, the Appellant **herein moves the JUSTICE of this Honorable Court** to additionally

**vacate every order created by the U.S. DISTRICT COURT** since the aforesaid and

**MEMORANDUM OPINION AND ORDER [DE-129] on August 9. 2023** since the first **NOTICE**

**OF APPEAL [DE-132]** and **MOTION FOR LEAVE TO APPEAL IN FORMA PAUPERIS**

**[DE-133]** on August 31, 2023. The Appellant herein moves the court to vacate and preclude the entire

docket of the District Court since District Court **[DE-137, September 21, 2023 ORDER** Signed by

Judge Rebecca Grady Jennings on 9/20/2023 **GRANTS [DE-133] MOTION FOR LEAVE TO APPEAL IN FORMA PAUPERIS, USCA-6 (23-5795) (SMJ)]** to **EXPEDITE THE APPEAL** and to **DISMISS and VACATE**: Court of Appeals for the Sixth Circuit **6 CIR. CASE NUMBERS 23-6108 AND 24-5511**. If this Honorable Court notwithstanding the Appellee can agree, "The relevant part of this case is focused on its merits is within the scope of what happened in 2023 leading up to the August 9, Memorandum Opinion and Order." which starts in this appeal **6 Cir. 23-5795**.

If upon **CONSOLIDATION** rather than **VACATE, DISMISS, and/or PRECLUDE** post-September 21, 2023 District Court decisions, 6 Cir 23-6108, and 6 Cir 24-5511; the **APPELLANT, alternatively MOVES** this Court to include all additional District Court Orders and Opinions including the most recent ORDER 156 (copy at Circuit Court as Document 22 in 6 Cir 23-6108 for 6 Cir 24-5511, striking the NOTICE OF APPEAL and its FEE WAIVER request on June 11, 2024, **DEFENDANT'S ORDER ON MOTION FOR LEAVE TO APPEAL IN FORMA PAUPERIS AND PLAINTIFF'S ORDER ON MOTION TO STRIKE [DE-156]**. **This Court can also consolidate all forthcoming appealable DISTRICT COURT ORDERS for this case, also including one more perhaps for the Plaintiff MOTION TO COMPEL JUDGMENT [DN-157]**. The pending **PLAINTIFF MOTION TO COMPEL** in the District Court can be made MOOT if the Circuit Court GRANTS, Appellant's **MOTION 23-5795, 23-6108, 24-5511 to a GRANT STAY OF JUDGMENTS** on all **Kentucky Western District Court Memorandum Opinions and Orders since 3:20-cv-00132 on August 9, 2024 in Memorandum and Opinion Order [DE-129].**

Alternatively, we have three appeals **6 Cir 23-5795, 6 Cir 23-6108, and 6 Cir 24-5511 perhaps more forthcoming,** one after the other are fraught with many more appealable issues and damage to the Appellant and defendants defaulted upon over the **alleged possible misuse of the Honorable Title of the Kentucky Colonel**, the Appellant argues that he needs the equal number of word limitation (13,000 x 3 for 39,000 words) applied as a triple A-Z brief accompanied by its relevant exhibits. This combined

case and brief should be treated as a special case, a special master should be designated, the Pro-Se Appellant insists on his proactive civil rights as an advocate of the Kentucky Colonel title since 1996 notwithstanding the Plaintiff-Appellee. This entire case and all this court activity are all within the scope of the Plaintiff's retaliation against the Appellant's civil and constitutional rights in 2020, who is a 28 year member of the Plaintiff's organization. This case also violates the ethical boundaries of honorary or regular membership in an organization without bylaws prescribed by the Code of Federal Regulations.

## PENDING MOTIONS

The Appellant understands that the Circuit Court has broad authority to manage its docket and ensure efficient proceedings. Prior to scheduling, striking or denying motions without prejudice are tools the Court can use to streamline the Appellate process and focus on the merits of the appeal.

When a Circuit Court is faced with numerous motions before an appellant submits a brief, it has several options at its disposal:

1. **Rule on the Motions Individually:** The court can address each motion separately, deciding whether to grant or deny it based on its merits and the applicable law. This is a common approach for motions that raise distinct issues or require separate analysis.

2. **Consolidate Motions:** If multiple motions raise similar or related issues, the court may consolidate them for a single ruling. This streamlines the proceedings and avoids duplication.

3. **Defer Ruling:** In some cases, the court may choose to defer ruling on certain motions until after the appellant's brief is filed. This could be done if the motion's outcome might be affected by arguments presented in the brief or if the court wants to consider the case as a whole before making a decision on specific issues.

4. **Seek Additional Briefing:** The court can request additional briefing from the parties on specific motions, especially if the initial arguments are unclear or the court needs additional information to make an informed decision.

5. **Refer to a Magistrate Judge:** In some jurisdictions, the court may refer certain pretrial motions to a circuit magistrate judge for a recommendation or ruling. This can help alleviate the burden on the Circuit Court judge and expedite the resolution of the motions.

6. **Dismiss Motions:** If a motion is clearly frivolous, irrelevant, inconsequential, inaccurate, mischaracterizes the record, or procedurally untimely; the court can summarily dismiss them without further consideration.

The specific approach taken by the Circuit Court depends on the relevant nature presented by the motions, the complexity of the issues involved, and the judge's discretion. **The goal of the Court must be to manage the pre-appeal process efficiently and ensure that all relevant issues are addressed before proceeding to the merits of the appeal and the appellate brief.** This case as a consolidated appeal involves three related appeals from U.S: District Court Case 3:20-cv-00132 which should be combined under Federal Rule of Appellate Procedure 3(b): this rule allows the court of appeals to consolidate appeals from separate judgments if they involve a common question of law or fact; 6th Circuit Rule 3(b): this rule echoes FRAP 3(b) and specifically grants the Sixth Circuit the authority to consolidate appeal.

**The pending motions and issues before the Court include:**

1) **Appellant's PRE-APPEAL MOTION FOR AFFIRMATIVE RELIEF [Document 17]** filed on March 11, 2024 to extend time to file brief, to amend case caption, to extend time to pay fee, to consolidate for briefing and submission.

2) **Appellee's RESPONSE TO APPELLANT'S MOTION FOR EXTENSION OF TIME TO FILE BRIEF [Document 18]** filed March 14, 2024 regarding a motion to amend caption, regarding a motion to extend time to pay fee, regarding a motion to consolidate for briefing..

3) **Appellee's MOTION TO DISMISS APPEAL [Document 19]** filed March 14, 2024 (The filing of this motion and pending IFP from the District Court on 23-6108 caused the combined cases 23-5795 and 23-6108 to be placed in ABEYANCE, Case Manager)

4) **Appellee's MOTION TO DISMISS APPEAL [Document 5]** filed on May 28, 2024 in Case 24-5511

5) **Appellant's MOTION FOR STAY OF JUDGMENTS PENDING APPEAL [Document 21]** filed on June 10, 2024 in 23-5795, 23-6108, 24-5511 to GRANT stay of district court judgment, RESPOND IN OPPOSITION TO (Deny the appellees' motion to dismiss cases 23-5795 and 23-6108), to consolidate for briefing and submission cases 23-5795, 23-6108, and 24-5511, to waive fee for case 23-6108 per the District Court Memorandum Opinion and Order [DE149] and include Case 24-5511 based on appellant's Notice of Appeal [DE151] filed on behalf of the corporate Defendants that have never appeared in the US District Court and remain unrepresented by legal counsel, To establish a new scheduling order to permit the Appellant to timely file and submit a consolidated A-Z brief in the consolidated appeal, to resume case and remove it from abeyance status.

6) **Appellee's RESPONSE TO APPELLANT'S MOTION FOR STAY OF JUDGMENTS PENDING APPEAL [Document 23]** filed June 12, 2024 regarding a motion for STAY;, regarding a motion to consolidate for briefing, regarding a motion to waive fee, regarding a motion resume case, in 23-5795 and 23-6108.

7) **Appellant's MOTION FOR LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS [Document ___]** filed on June 20, 2024 in Case 24-5511 regarding payment of the Circuit Court Filing Fee for NOTICE OF APPEAL [DE-151] and MOTION TO WAIVE FILING FEES [DE-152] stricken by the District Court on Memorandum Opinion and Order [DE-149] and Default Judgment ORDER [DE-150].

8) **Appellant's (CONSOLIDATED) RESPONSE, REPLY, AND OBJECTION IN OPPOSITION TO APPELLEE'S MOTIONS w/ MOTION TO EXPEDITE [Document ___]** filed on June 20, 2024 in Cases 23-5795, 23-6108 and 24-5511 **[This Document]**

— 16 —

## ARGUMENT OPPOSING RESPONSES AND REPLIES OF APPELLEE

This "**Response and Objection in Opposition to Appellee's Motions to Dismiss**" applies to two dismissal motions filed by the Appellee who since this case began has targeted the procedural and due process civil and constitutional rights of this Appellant which as of today retains his most of his rights before this Honorable Court. This motion seeks the Circuit Court to **categorically deny** with prejudice the **Appellee's Motions to Dismiss in cases 23-5795 [Document 19]** and **23-6108 [Document 18]** (same motion and case) in the combined appeal filed on March 14, 2024 and **Appellee's Motion to Dismiss Appeal in 24-5511 [Document 5]** filed on May 28, 2024. Both of these sophisticated dismissal motions seek to deprive the Appellant of his procedurally safeguarded right to appeal and his substantive rights under the liberty of U.S. Constitution and the U.S Code as a civil rights advocate, a volunteer, and as a whistleblower which were categorically denied and never protected by the U.S District Court.

The Appellant cites numerous errors he has identified in the U.S. District Court proceeding since the case began on February 20, 2020; he **makes a clear, compelling, evidentiary, and *prima facie* claim of error with judicial bias, discretionary denial of due process rights, and blind deference for the Plaintiff** represented by the Wyatt Firm in the more recent contempt hearing against him that began in January 2023. The Appellant became a whistleblower in 2019 who has been and is a donor, member and volunteer of the Plaintiff's organization for the previous 23 years who had also created and developed the first website for real Kentucky Colonels online in 1998, four years prior to the Plaintiff appearing online for the very first time.

As of May 21, 2024 the Appellant acquired new evidence, a handbook published in 1930 which substantially proves that the Plaintiff with the same law firm has perpetrated a **fraud upon the court** (knowingly or unknowingly) in *The Honorable Order of Kentucky Colonels, Inc v. Building Champions, LLC*, 3:04-cv-00465, (W.D. Ky. 2004) and subsequently in both cases brought against him *The Honorable Order of Kentucky Colonels, Inc. v. Kentucky Colonels International*, 3:20-cv-00132, (W.D.

Ky 2020.) and *The Honorable Order of Kentucky Colonels, Inc. v. Globcal International*, 3:23-cv-00043, (W.D. Ky 2023).

## PROCEED TO APPEAL

Some of the things that will make this Appeal particularly interesting for the Sixth Circuit is the fact that two judges recused themselves early in the case during the first two weeks, one of them cited the Plaintiff was likely to succeed on the merits of the case just five days after it was filed without knowing anything at all about the Defendants in his prejudgment imposition of a TRO, the same judge held a preliminary injunction hearing 9 days later which the Defendant(s) could not attend (or find a lawyer that could intervene) even by Zoom at the time, the Appellant was living in Venezuela, the judge held the hearing and placed the case under the advice of the court, before recusing himself without stating the reason being that he was a member of the Plaintiff's organization (a Kentucky Colonel), then passing the case to another judge appointed by then President Donald Trump (another member of the Plaintiff's organization) which imposed a strict non-statutory preliminary injunction and defaulted on the corporate defendant(s) five months later during the COVID lockdown. The default of the corporate defendant opened the door for the remaining defendant (this 'appellant') to **finally file his answer and affirmative defenses** notwithstanding the corporate defendant(s) in default, however the answer and affirmative defenses filed were never heard, because the case was being swept under the rug, transferred over to the magistrate court and destined for a confidential settlement conference less than five months later during the Christmas holiday.

The defendant (now appellant) followed all the instructions given by the magistrate judge as the mediator prior to the confidential settlement conference, providing all of the details acceptable for a settlement in writing in good-faith to settle the matter equitably with the plaintiff after 10 months of litigation and a number of slighted motions that were not or ever considered by the court which had forced the plaintiff to settle or face a declaratory judgment which would have canceled their trademarks

based on the defendant ('appellant') discovering they were all fraudulently applied for (particularly the newest ones applied for 3 days prior to filing the case") omitting all previous and current uses of the "KENTUCKY COLONELS" mark including the alleged use by the defendant. Simultaneously the Defendant had filed a letter of protest and was beginning an opposition proceeding with the United States Patent and Trademark Office ("USPTO").

## HONORABLE PRO-SE APPELLANT

On this day, Colonel Wright, as the Appellant, humbly appears before the esteemed Sixth Circuit Court of Appeals as an intermediate legal practitioner. Despite his status as a novice of the legal profession, he possesses a high level of intelligence and comprehensive abilities having majored in philosophy, currently serving as a professional goodwill ambassador representing community-based objectives in the United States and South America on behalf of fourth-world Indigenous nations and marginalized peoples. Colonel Wright had the honor of being commissioned as a Kentucky Colonel in 1996 by Governor Paul E. Patton, a distinction that he has held for 28 years. Since the 19th century, the Kentucky Colonel Commission has been the highest form of recognition and honor bestowed upon civilians for their accomplishments, deeds, and valor in the Commonwealth of Kentucky. He earned this distinction for bringing attention to Kentucky and Pennsylvania when he distributed millions of trees to regional disaster zones and community urban forestry efforts.

In the present matter, Colonel Wright, an individual appellant, has faced accusations and unfavorable consequences stemming from actions undertaken by the Appellee for more than twenty-three years. These allegations revolve around the promotion of his esteemed title as an Honorable Kentucky Colonel and as a member of the Plaintiff's organization. The Honorable Order of Kentucky Colonels, Inc. has asserted intellectual property infringement claims against Colonel Wright since 2001, contending that his actions infringe upon its registered trademarks and fictitious deceptive origins, contrary to judicially noticeable historical fact from the Library of Congress. In February 2020,

the Appellee initiated a strategic lawsuit against public participation, targeting Colonel Wright, unidentified parties, and three corporate entities named in the primary litigation. Regrettably, the case proceeded unethically while the Appellant's civil rights were being most heavily restrained for ten months, concluding in a confidential court-mediated settlement conference. This conference resulted in an erroneous non-statutory agreed permanent injunction and the dismissal of the case with prejudice, fashioned around a preliminary injunction that was modified with a special stipulation to exclude the title and term "Kentucky Colonel," "Kentucky colonelcy," and "Kentucky colonels" to guarantee the appellant exclusive limited rights in order to make it an equitable remedy, notwithstanding the Defendant's Constitutional Rights which the District Court cannot restrict. The settlement conference took place approximately 45 days after the pro-se defendant's wife of 20 years died near the end of the COVID pandemic, the magistrate was made aware of the Defendant's wife passing away less than 60 days earlier.

## HOKC, INC. (KENTUCKY COLONELS) v. KENTUCKY COLONEL CO-OP
## 6 CIR 23-5795, 23-6108 & 24-5511

Several areas of law and constitutional provisions are relevant in this combined case, depending on the specific details and circumstances in which it is perceived:

**First Amendment:** This guarantees freedom of speech, press, assembly, and petition. It protects the right to express opinions, publish information, and criticize the government.

**Fourteenth Amendment:** This guarantees due process and equal protection under the law. It is relevant when rights are violated by state action or in the face of discrimination.

**Defamation Laws:** These laws protect individuals from false statements that harm their reputation. A public figure must prove actual malice (knowledge of falsity or reckless disregard for the truth) to succeed in a defamation claim.

**Privacy Laws:** These laws protect individuals from unwanted intrusions into their personal lives. As a public figure, when a person becomes a Kentucky Colonel the right to privacy becomes generally more limited than that of a private citizen.

**Copyright Law:** A person that creates original works, upon publication the US Copyright Act protects their right to control how those works are used or in what context.

**Lanham Act:** This law prohibits false advertising and unfair competition. This is relevant if someone uses a name or likeness in a way that is misleading or harmful to reputations or creates a false designation of origin, false description, and dilutes an unregistrable mark.

**Right of Publicity:** Many states have laws that protect individuals from the unauthorized use of their name, likeness, or other aspects of their identity for commercial purposes. Public figures that use their rights, have a greater right of publicity.

**Anti-SLAPP Laws:** Kentucky has laws that protect against Strategic Lawsuits Against Public Participation (SLAPP), which are lawsuits designed to silence or intimidate critics, by silencing them or chilling their substantive civil and First Amendment Rights.

**Public Figure Status:** Status as a public figure has a significant impact on legal rights. Public figures have a higher burden of proof in defamation cases and have less privacy protection.

**Specific Facts:** The specific laws and legal arguments that apply to this case will depend on the contextual details presented in the Appellate Brief, such as the nature of the statements made during the case, the context in which they were made, the negotiations that occurred during the settlement conference, the actions taken by the court and the specific harms suffered by the parties including the "unknown defendants" **particularly the contumacious *nihil dicit* corporate defendant** found in contempt without ever appearing, speaking, acted, or being afforded counsel by the court.

## CONSOLIDATING MOTION FOR LEAVE: TO FILE IN FORMA PAUPERIS IN 24-5511, TO CONSOLIDATE RELATED APPEALS 23-5795, 23-6108, and 24-5511 PER 10-1

Appellant, Wright, moves the Court to consolidate and combine the three above-captioned appeals, which arise from the **same district court case and involve related issues**. Three appeals, one issue, one case. No definitive briefing and litigation schedule has been issued in **6 CIR 24-5511**, case numbers **6 CIR 23-5795 and 23-6108** are in ABEYANCE per the Circuit Court Clerk, no briefs have yet been filed, and the Appellant respectfully asked that a single briefing and argument schedule govern the matter as consolidated. The Circuit Court generally grants the motion to consolidate the cases under **5 CFR § 1201.36 - Consolidating and joining appeals.**

The Appellant contends that he is within his rights to Appeal the District Court's decision and refusal to grant Wright, "**A STAY OF JUDGMENTS**"; Wright also contends that it is outside of the scope and jurisdiction of the District Court to retroactively strike, delay, or deny a Defendant his right to appeal a matter tendered to the U.S Circuit Court through it or once the **NOTICE OF APPEAL** has been filed. While the District Court should have concurred with its previous ORDERS to GRANT IFP; instead it has Stricken **NOTICE OF APPEAL [DE-151] and MOTION TO WAIVE FILING FEES [DE-152]**, but these filings do not end there for the District Court for it created another appealable order. The Appellant argues that as the Executive Officer and President of a charitable organization in financial distress, under an inevitable Administrative Dissolution deadline of June 30, 2024 by the Kentucky Secretary of State and recognized by the District Court as a competent pro-se defendant that he is legally entitled to submit the both of the documents on his own behalf and on the behalf of the corporation, where if necessary legal counsel can or may and should be designated by the Court.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons stated above, Appellant, Colonel Wright, respectfully requests this Court to grant the affirmative relief requested in previous motions and continue this case providing him a new deadline considering 6 CIR 24-5511 and schedule a new due date for his triple A-Z Appellate Brief withstanding the consideration of this instant motion.

The Appellant humbly prays the Court will understand the Appellant as a *pro se* in *forma pauperis* litigant, ensuring equal access to justice and a fair opportunity to present his case within the scope and limitations of his rights. The Appellant is a whistleblower with detailed and specific insider knowledge of the Appellee's operations after having donated and working as a volunteer and serving as an honorary member since 1997 for the Plaintiff, and having suffered from a retaliatory assault on right guaranteed to him by the Commonwealth of Kentucky. Additionally, it is the Prayer of the Appellant that the Court grant any other relief deemed appropriate, just and equitable.

Puerto Carreño, Colombia

Dated: June 20, 2024

Col. David J. Wright
Kentucky Colonel
david.wright@colonels.net
+1 (859) 379-8277

**Postscript**: This document is a comprehensive electronic motion, reply, and response developed by a pro se appellant to address five prejudicial documents filed by the appellee. The combined document consists of seven thousand and fifty-eight words.

**Attached**: Certificate of Service and Certificate of e-Filing Compliance

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT
# CASE NO. 24-5511

### HONORABLE ORDER OF KENTUCKY COLONELS, INC.
**Plaintiff-Appellee**

v.

KENTUCKY COLONELS INTERNATIONAL; GLOBCAL
INTERNATIONAL; ECOLOGY CROSSROADS COOPERATIVE
FOUNDATION, INC.; and UNKNOWN DEFENDANTS
Defendants

### COL. DAVID J. WRIGHT, A KENTUCKY COLONEL

Individually and on behalf of all other similarly titled individuals, and

in his capacity as President of Ecology Crossroads Cooperative Foundation,

**Defendant-Appellant**

## MOTION FOR LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS
## AND REQUEST FOR COURT-APPOINTED COUNSEL

Comes now, (Col.) David J. Wright, a Kentucky Colonel, (**"Colonel Wright"**) or
(**"Appellant"**) ot (**"Wright"**), a *pro se* in *forma pauperis* defendant-appellant in the matter:
[The] Honorable Order of Kentucky Colonels, Inc. v. Kentucky Colonels International (an
unincorporated defunct membership association**), et al.** admitted as Sixth Circuit Court of
Appeals Case Nos. 23-5795 and 23-6108, and now most recently **24-5511** in this Motion for
Leave to be recognized IFP by the Sixth Circuit Court to present appeals from **Western
Kentucky District Court Cases 3:20-cv-00132 and 3:23-cv-0043** pursuant to Federal Rules of
Appellate Procedure, Rules 2, 3, 4, 8, 18, 24, 26, 27, 44 and 48.

Col. David Wright, makes this appearance as the Appellant, "Individually and on behalf of all other similarly titled individuals, and in his capacity as President of Ecology Crossroads Cooperative Foundation, to present his APPELLANT MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND REQUEST FOR COURT-APPOINTED COUNSEL.

## I. INTRODUCTION

Defendant-Appellant David J. Wright, individually and in his capacity as President of Ecology Crossroads Cooperative Foundation, Inc, respectfully moves this Court for leave to proceed in *forma pauperis* and discretionary appointment of *pro bono* counsel to protect his civil rights.

## II. BACKGROUND

The Corporate Defendants, including ECCF, are in severe financial distress. ECCF is unable to file its annual report and will be administratively dissolved by the Commonwealth of Kentucky on June 30, 2024. The organization has had a balance of less than $250 in its bank account since January. Globcal International, a cooperative body and publishing platform owned by ECCF, remains functional but is not a consensual party to this action. The Appellant and other individual members of the Globcal International cooperative are not actively engaged in any infringement actions, and the District Court has not properly enjoined these parties, apart from the Appellant.

The Corporate Defendant, **Globcal International**, a subsidiary international cooperative of **Ecology Crossroads Cooperative Foundation** are appealing from the orders and judgments of 3:20-cv-00132 WD. of Kentucky of the United States District Court as *nihil dicit* in default since August 13, 2020, the party has *nothing to say in this case,* **except that it objects**. This

motion is necessitated by the financial distress of both the individual Appellant and the corporate Defendant-Appellant as its current principal officer for the United States.

Due to severe financial distress, facing dissolution, caused by this case, the Nonprofit Corporate Defendants are unable to afford the filing fees or retain counsel or pay the judgment. This motion is submitted to demonstrate the financial incapacity of the Nonprofit Defendants and to request the assistance of appointed counsel, their removal from the case, or to ensure the fair administration of justice with a stay of the judgment. The organization will not be appearing in court without counsel, however it wishes demonstrably, to retain its rights.

### III. AFFIDAVIT OF FINANCIAL DISTRESS

I, David J. Wright, hereby declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and belief:

1. I am the President and Executive Director of Ecology Crossroads Cooperative Foundation, Inc., and I am filing this affidavit in support of the motion to proceed as the Appellant in *forma pauperis*, representing a *nihil dicit* corporate defendant.

2. The Nonprofit Defendant(s) has no significant assets or income. They are currently unable to meet basic operational expenses, let alone legal fees estimated at $30K.

3. The Cooperative Defendants have exhausted all available financial resources and have no means to pay the filing fees required for this appeal.

4. Attached as Exhibit A is a detailed financial statement of the Corporate Defendants, showing our current financial situation.

5. The Defendant-Appellant's income and assets have not grown, the Appellant earns under $11,000 USD per year as a subcontractor and website developer.

## IV. REQUEST FOR COURT-APPOINTED COUNSEL

In light of the financial distress detailed above, the Nonprofit Corporate Defendants respectfully request that this Court appoint *pro bono* counsel to represent the organization in this appeal. The appointment of counsel is necessary to ensure that our legal rights are adequately represented and that we have a fair opportunity to present our objections. The organization has no financial resources or liquidable property or intangible assets.

## V. ARGUMENTS

### A. Jurisdiction and Authority over Notices of Appeal

1. **District Court's Limited Authority:** While the District Court notes corporate defendants lack of counsel in the Plaintiff's Motion to Strike a Notice of Appeal, the ultimate authority to strike or dismiss an appeal rests with the Court of Appeals, because it is not a function of the District Court to apply jurisprudence when an appeal action is initiated against it. According to *Griggs v. Provident Consumer Discount Co., 459 U.S. 56 (1982)* ⧉ "the filing of a Notice of Appeal transfers jurisdiction from the District Court to the Court of Appeals." Thus, *any determination regarding the propriety of the Notice of Appeal* should be made <u>by the appellate court</u>.

2. **Procedural Deficiencies and Due Process:** Even if there were procedural issues with the Notice of Appeal, such as filing by a non-attorney on behalf of a corporation, these matters are appropriately addressed by the Court of Appeals. The district court's role is to identify and record any issues, but it is not within its jurisdiction to strike the Notice of Appeal. *Hamer v. Neighborhood Housing Services of Chicago, 138 S. Ct. 13 (2017)* ⧉ ,

underscores the importance of allowing the appellate court to make determinations regarding appeal deadlines and procedural compliance.

**B. Right to Appeal and Fair Administration of Justice**

Disposing of an appeal without allowing the Court of Appeals to review the substantive claims would cause aggregated manifest injustice. Colonel Wright's right to appeal, particularly in his individual capacity, standing as the Executive Director, Founder, and President of a 501(c)(3) nonprofit corporate defendant(s) is legitimate; as the only defendant appearing in the case, must be respected to ensure due process. Any procedural misstep regarding corporate representation should be remedied before the appropriate judicial guidance and competent jurisdiction rather than dismissed or disregarded by a lower court or challenged by a Plaintiff therein. It should be reflected that the corporate nonprofit defendants did not appear in court, they never said anything is court because the court did not recognize them there, they need not be included in the appeal with any voice, but should be noted as *nihil dicit* appellants without legal representation that have been sanctioned.

The Plaintiffs cases **3:20-cv-00132 [DE-1]** and **3:23-cv-00043 [DE-1]** both use fraudulent and misrepresented evidence, were both presented as sophisticated strategic lawsuits against public participation; and all of its 2023 motions in the District Court and its motions and responses before the Sixth Circuit were all designed to restrain and injunct the civil rights of the Appellant as an individual and as the President of Ecology Crossroads Cooperative Foundation, Inc. and its subsidiary Globcal International. Demonstrating falsely held assumptions, unsustainable beliefs, misunderstanding, and reckless acknowledgements by the U.S. District Court about what a Kentucky Colonel actually is or the Plaintiff's legal role.

**C. Can the District Court sanction for contempt "financially distressed insolvent contumacious *nihil dicit* unrepresented defendants (nonprofit corporations) in default" after 4 years that were never legally represented and have never legally appeared in court? Or deny their right to appeal such a default action, with or without counsel?**

During the process of identifying cases in which a United States Court of Appeals has assigned legal counsel to an indigent corporate defendant, notably a civil rights organization, a number of pertinent principles and relevant case law have been identified. The right to appeal resides in the rights of the organization's principal officer as do other corporate principles that are not represented by counsel; that officer is this Appellant. Under all circumstances this Appeal should move forward, with or without counsel says the Pro-Se Appellant.

**Right to Counsel:** The Sixth Amendment to the U.S. Constitution guarantees the right to counsel in criminal cases. While this right doesn't automatically extend to civil cases, courts have recognized that in some circumstances, due process may require appointment of counsel in civil matters, especially if the case involves fundamental rights or liberties.

**Indigent Status:** Courts may appoint counsel to indigent individuals or financially insolvent.organizations who/that cannot afford to hire counsel.

**Discretion of the Court:** The decision to appoint counsel in a civil case is ultimately within the discretion of the Circuit Court. Courts consider various factors, such as the complexity of the case, the ability of the litigant to represent themselves, and the potential impact on the litigant's rights. Respectfully request the court to deny the Appellee's Motion for Dismissal based on the prejudicial grounds of the Appellant's lack of legal counsel due to its financial insolvency as a non-profit organization. The Appellant is the executive official of a *nihil dicit* Defendant in

default during a period when it maintained good standing with the Secretary of State's Corporate Register, the organization has no other voice than that of the Appellant.

In *Lassiter v. Department of Social Services,* 452 U.S. 18 (1981): ⬀  The Supreme Court held that due process does not always require appointment of counsel in civil cases, but the court must consider the specific circumstances of each case, including the complexity of the issues and the litigant's ability to represent themselves.

In *Bounds v. Smith,* 430 U.S. 817 (1977): ⬀ The Supreme Court held that prisoners have a constitutional right to access the courts, which may include the right to legal assistance in certain circumstances.

In *Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.* (2nd Cir. 1989): ⬀ While not directly on point, this case illustrates how a court might consider the financial resources of a corporate defendant when deciding whether to appoint counsel.

- **Civil Rights Cases:** Courts have appointed counsel in civil rights cases involving indigent individuals or organizations, recognizing the importance of protecting fundamental rights.

- **Pro Bono Representation:** Many attorneys and law firms offer pro bono (free) legal services to individuals and organizations in need. Acquiring counsel often comes based on the court's cognitive suggestion and in its descriptive framing of a case.

- **Importance of the Issues:** This case involves important constitutional or civil rights issues that warrant the appointment of counsel to ensure a fair and just resolution.

- **Emphasis the Complexity of the Case:** This case involves distinguishing civil rights, constitutional rights, and a corporation's right under trademark law which is complex and requires the expertise of a *pro-bono* attorney specializing in civil and human rights.

## VI. CONCLUSION

For the reasons stated above, Wright humbly and respectfully requests that this Court DENY Appellee's Motions to Dismiss the Appeals, DENY other mediate Motions of the Appellee against the Appellant's indigent *pauper status* as discriminatory. Likewise, Wright PRAYS that this Court provide guidance on: **1) how to proceed**; **2) to specify a schedule for the combined appeal, 3) provide the Appellant with extended word limits for his initial consolidated brief on these three appeals; 4) allow the Appellant to represent himself in this Appeal and as the Executive Officer of the *nihil dicit* defendants.** This is to ensure that the substantive legal issues are addressed in a manner consistent with due process and administration of justice.

For the reasons stated above, the Appellant as its President and Executive Officer of the paralyzed, financially insolvent organization(s) that have practically suspended their operations and social media exposures, respectfully request that this Court GRANT leave to proceed in *forma pauperis* as "**Appellants *nihil dicit* (without counsel) in default**" or appoint *pro bono* counsel to protect their rights in this appeal in 6 Cir. 24-5511.

In further consideration it should be noted that the most recent **Order to Proceed in Forma Pauperis** issued by the District Court was on April 22, 2024 for **6 Cir. 23-6108** should be applied to **6 Cir. 24-5511**, in light of Appellant's indigence and hardship living on less than $1,000 USD per month he cannot afford to pay the filing fee for 6 Cir. 24-5511; filing fees were

waived for 6 Cir. 23-5795 and 6 Cir. 22-6108, they should be WAIVED for 6 Cir. 24-5511 and this case should be combined to include the other Defendants (in name only) without counsel in default as they were in District Court, to let the case proceed on its merits and the Combined A-Z Appellate Brief be filed.

Puerto Carreño, Colombia

Dated: June 20, 2024

Col. David J. Wright
Kentucky Colonel
david.wright@colonels.net
+1 (859) 379-8277

**Postscript**: This document serves as a formal request for permission to file in forma pauperis. It was drafted by a pro se appellant to address prejudicial motions, allegations, and responses filed by the Appellee. The combined document comprises a total of two thousand and ninety-six words.

**Attached**: Certificate of Service & Certificate of e-Filing Compliance

# Exhibit A

**Financial Status of Ecology Crossroads Cooperative Foundation, Inc. and Globcal International, a subsidiary organization.**

To: Court Clerk of the Sixth Circuit,

I am writing to provide a detailed statement regarding the current financial status of Ecology Crossroads Cooperative Foundation and Globcal International, a subsidiary organization. As the Treasurer, I oversee all financial transactions and maintain accurate records of the organization's finances. Each year I am responsible for filing the annual report and filing the 990-N Form with the Internal Revenue Service under Employer Identification and Tax Exemption Number 61-1259384.

For the fiscal year of **July 01, 2023 thru June 30, 2024**, as of June 15, 2024, the financial status of Ecology Crossroads Cooperative Foundation and its subsidiary is as follows:

1. **Current Bank Balance:** The organization has a total of $234.00 in its bank account.
2. **Donations and Funding:** The organizations have not received any donations or adequate funding during this period, the organization is financially insolvent. There are no incoming funds or grants anticipated now or in the near future.
3. **Outstanding Debts:** The organization borrowed $3,000 during the COVID pandemic co-signed to David Wright. No payments have been made on that debt.

The above information accurately reflects the financial status of Ecology Crossroads Cooperative Foundation and Globcal International, as of the date mentioned. The organization is currently operating without external funding or donations and relies solely on the existing bank balances and direct selected member support to cover current operational expenses.

Sincerely,

/s/ Nicholas A. Wright

Col. Nicholas A. Wright, Treasurer

**NOTICE OF COMPLIANCE WITH ELECTRONIC FILING REQUIREMENTS**

Appellant, Col. David J. Wright, individually and as President of Ecology Crossroads Cooperative Foundation, Inc., hereby submits this Notice of Compliance to confirm that all briefs, pleadings, responses, and motions filed electronically in this matter by him comply with the following standard guidelines:

➔ **Electronic Format:** All documents are submitted in PDF format, compliant with the Sixth Circuit's Electronic Filing Rules and the Public Access to Court Electronic Records (PACER) system. Documents cited here are publicly accessible on RECAP.

➔ **Hyperlinks:** All citations to case law, statutes, regulations, or other legal authorities are hyperlinked to the relevant source within the electronic document, using the ECF/PACER system's linking capabilities. The external link sign ⧉ symbolizes links to exhibits and citations that are to non-governmental top-level domain servers.

➔ **Bookmark Links:** The e-Brief and e-Motions are often bookmarked within the same document to facilitate navigation and reference to specific sections and arguments.

➔ **Accessibility:** The e-Briefs, e-Motions, e-Memorandums, and in general e-Filings are prepared with accessibility in mind, ensuring that they are compatible with assistive technologies for users with disabilities.

➔ **Additional Requirements:** The Appellant has made a good faith effort to comply with all other electronic filing requirements set forth in the Sixth Circuit's Local Rules and the PACER User Manual.

## Certification

I, Col. David J. Wright, hereby certify that the electronic documents e-Brief, e-Response, e-Reply, or e-Motions submitted in this matter comply with the electronic filing requirements of the United States Court of Appeals. /s/ David J. Wright, david.wright@colonels.net

### Certificate of Service

I hereby certify that on June 20, 2024, I emailed for filing the foregoing appellant motions, responses, replies, objections, and7or pleadings with attachments to the Clerk of the Court for the United States Sixth Circuit Court of Appeals using the special Pro Se Intake Email CA06_Pro_Se_Efiling@ca6.uscourts.gov for entry by the Court Clerk in the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system once the Circuit Court Clerk files the document(s) without prejudice to the Appellee.

Kelly L. Stephens, Clerk
Sixth Circuit Court of Appeals
501 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio 45202-3988